DORA SHOREN *vs.* UNITED STATES RUBBER COMPANY.

APRIL 30, 1958.

PRESENT: Condon, C. J., Roberts, Andrews, Paolino and Powers, JJ.

CONDON, C. J. This is an original petition for workmen's compensation. The workmen's compensation commission denied and dismissed the respondent's appeal from a decree of the trial commissioner awarding the petitioner compensation for partial disability and entered a decree of affirmance. From such decree the respondent has appealed to this court.

In support of its appeal it has filed seventy reasons, but in its brief it has grouped them under four main points. Under its first point it contends that the finding of a compensable traumatic injury on March 1, 1956 is contrary to law and all the evidence in the case. It claims that the allegation in the petition and the proof was of an injury on an occupational basis, but that there was no proof of either "peculiar characteristics" or of a disease to bring the injury under the occupational disease clause of the compensation act. And it further argues that under the allegation and proof a finding of a traumatic injury was squarely against the law and the uncontradicted evidence.

The petition alleges that the employee received an injury in March 1956 arising out of and in the course of her employment with respondent as a golf ball winder. The character and extent of such injury is described as "Strain of the thenar muscle group, left hand," and as having happened "as a result of constant grasping of the golf ball core." We do not interpret those allegations as alleging a *disease* associated with and referable to the duties of her occupation. On the contrary, and consistently with the liberality in pleading that is tolerated in workmen's compensation proceedings, we are of the opinion that they may be reasonably accepted as the allegations of an injury having no reference to the occupational disease clause of the act. If the petitioner is to prevail she may not derive any help from that clause, but must prove that she received a personal injury arising out of and in the course of her employment, in connection therewith and referable thereto. The real question,

therefore, is whether there is any evidence to prove such an injury within the meaning of the act.

The injury which is now compensable thereunder need no longer meet the requirements of an accident. In this connection the commission stated in its decision, without citing any authority therefor: "It is now well settled that a gradual break down of a part of employee's body due to constant and continued use of such part, in performing the duties of a particular job which causes disability is considered a personal injury."

The authorities appear to be divided on this question but the supreme judicial court of Massachusetts early decided in *Hurle's Case,* 217 Mass. 223, that blindness resulting from constant exposure to the inhalation of coal tar gases was a compensable personal injury within the meaning of the Massachusetts act providing compensation for personal injuries arising out of and in the course of the employee's employment. In that case the court rejected an ingenious and exhaustive argument by the employer's counsel to the contrary in these words: "But the argument is not convincing. It might be decisive if 'accident' had been the statutory word." Later in *Johnson's Case,* 217 Mass. 388, 390, the same court held that lead poisoning which the employee had been gradually absorbing for twenty years and which had finally disabled him was a personal injury, saying: "* * * it is clear that 'personal injury' under our act includes any injury or disease which arises out of and in the course of the employment, which causes incapacity for work and thereby impairs the ability of the employee for earning wages."

The comprehensiveness of the term was further emphasized in *Madden's Case,* 222 Mass. 487, 491, in the following language: " 'Personal injury' is materially broader in its scope than is 'personal injury by accident.' 'Personal injury' standing by itself comprehends a wide range of physical harm." But in that same case the court took pains to

point out: "A high degree of discrimination must be exercised to determine whether the real cause of an injury is disease or the hazard of the employment. A disease, which under any rational work is likely to progress so as finally to disable the employee, does not become a 'personal injury' under the act merely because it reaches the point of disablement while work for a subscriber is being pursued. It is only when there is a direct causal connection between the exertion of the employment and the injury that an award of compensation can be made." This distinction was more clearly marked out and compensation denied in *Maggelet's Case,* 228 Mass. 57. The act, the court therein observed, "awards compensation for disease when it rightly may be described as a personal injury. A disease of mind or body which arises in the course of employment, with nothing more, is not within the act. It must come from or be an injury, although that injury need not be a single definite act but may extend over a continuous period of time. * * * The disease must be, or be traceable directly to, a personal injury peculiar to the employment."

The principle of the above cases was applied in *Crowley's Case,* 287 Mass. 367, and *Perrotta's Case,* 318 Mass. 737. In the latter case the employee was a packer and inspector of rubber soles. In her work she used gasoline containing tetraethyl lead to remove spots from the soles. This gradually resulted in injury to her hands that finally brought on anemia and arthritis which incapacitated her. "Physical injuries to the hands of an employee," the court said, "which are caused by using a poisonous substance in doing his work are compensable injuries."

Since the words "by accident" were removed from our act by public laws 1949, chapter 2282, sec. 2, it is now substantially the same as the Massachusetts act, and we think that the words "personal injury" standing alone should be construed as the supreme court of that state has construed "personal injuries" in the above-cited cases.

Hence we are of the opinion, without expressly approving the above-quoted statement of the commission in the case at bar, that their finding that petitioner received a personal injury arising out of and in the course of her employment, connected therewith and referable thereto, was not contrary to law.

The next question is whether such finding is supported by any legal evidence. After carefully reading the transcript and the exhibits we think there is such evidence. The petitioner testified that in March 1956 she injured her left hand in performing the duties of her employment as a golf ball winder. She testified that the pain in her hand did not come on suddenly but was gradual and that at the end of three weeks it was "very, very painful." Finally the pain was so bad she reported it to the plant nurse who referred her to Dr. Nerone, the plant doctor. He strapped her hand and then sent her to have X rays taken of it the following week. She saw him a second time after the X rays were received and he recommended that she be given lighter work, which was done. Doctor Nerone did not testify.

The petitioner went to Dr. Carroll M. Silver for treatment on June 26, 1956. From the doctor's report, which is in evidence, it appears that she gave him the following history: "She states she is regularly employed by the U. S. Rubber Company, Valley Street, Providence, Rhode Island. In March, 1956, she did golf ball winding, and this entailed constant grasping of golf ball core between her left thumb and index finger. She developed severe pain in the left hand, near the base of the thumb, radiating up into the wrist and up the arm. She was seen by the company doctor, who strapped her hand and wrist without relief. She was given light work to do. She was laid off on June 6, 1956 because of slackness of work." He diagnosed her injury as "Strain of thenar muscle group, left hand, due to occupation." Doctor Silver expressed the opinion that she was partially disabled in the use of her left hand but could do light work

"which does not entail repeated grasping or strenuous exertion with the left hand."

He examined her again on September 5, October 18, and November 9, 1956, and found her convalescing from the strained muscle but that she still presented a partial disability of her left hand. He advised her to continue to give it hot soaks as recommended and to avoid any local stress. He further advised that she continue with light work. He reported such work would be beneficial to her both mentally and physically, but that she remained disabled from doing "her previous work which entails constant grasping involving the thumb and index finger."

On the view of the applicable law which respondent contends for here, such evidence may fall short as proof of a personal injury, but on our view of the law it is adequate. In other words we think it substantially meets the requirements of some evidence from which the commission could reasonably find such an injury. We do not inquire as to its weight, since that is not within our province in workmen's compensation cases. There is, therefore, no merit in respondent's first point that the commission's finding of a personal injury is against the law and the evidence.

This brings us to respondent's second point, namely, that the finding of an average weekly wage of $72.44 is against the law and the evidence. The commission determined petitioner's average weekly wage by taking the average of the weekly wages she earned in the four weeks next before she was disabled by her injury. Her wages for the first two of such weeks were $75.87 and $78.31 and they were not earned on the golf ball winding job on which she was injured but on a yarn rewinding job. The last two weeks' wages only were earned on the golf ball winding job and were $67.80 each. The respondent contends that the commission erred in determining the average in that manner because the act provides that it shall be "the average weekly wage earned by the employee at the time of the injury

\* \* \*." It argues that under such language the act means the average wage earned on the job in the performance of which she received her injury. In this connection it points out that under our cases this rule is followed in determining whether a disabled employee who returns to work has been restored to his full earning capacity.

There is some merit in respondent's contention, but it is contrary to the long-established practice of the office of the director of labor, the superior court, and the workmen's compensation commission. As far as we are aware this question has never been heretofore raised. The act itself does not provide a formula by which such an average shall be determined. In the absence of a statutory rule, a long-established administrative and judicial practice of giving effect to the act, although not absolutely controlling and binding upon this court, will be looked upon by us with favor if otherwise fair and reasonable. In the circumstances of the case at bar we think its application was not unfair or prejudicial to respondent. If the act provided that the weekly wages earned at the time of the accident were to be the standard for measurement we would be bound to adopt as such standard petitioner's wages earned on the golf ball winding job, but since the act refers not to such wages but to the *average* weekly wage we are not prepared to say that the formula used by the commission was against the law.

We find no merit in respondent's third point. The evidence is undisputed that because of her injury petitioner is now working for another employer at lighter work and for less wages than she was able to earn at her old job before her injury. The commission properly found that she was partially disabled. The facts that she was laid off by respondent solely on account of lack of work and cannot be rehired presently because of a rule of the union have no bearing on her partial disability. The findings of vari-

able compensation for four different periods of partial incapacity from March 6, 1956 to November 10, 1956 are in our opinion based upon evidence from which the commission could so find and are not contrary to law.

The respondent's fourth and last point is based upon certain alleged erroneous rulings of the trial commissioner on the admission of evidence. The full commission found that point to be without merit because in their opinion the trial commissioner did not rely upon such evidence in arriving at his decision. We have examined the transcript with particular reference to the evidence objected to and, assuming without deciding that the rulings were erroneous, we are of the opinion that such evidence was not of a prejudicial nature.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

## On Motion for Reargument.

### MAY 9, 1958.

PER CURIAM. After our decision in the above case the respondent asked and received permission to file a motion for reargument. Pursuant to this permission it has filed such a motion, setting out therein certain reasons on which it bases its contention that justice requires a reargument of the case. We have carefully considered those reasons and we are of the opinion that they are without merit.

Motion denied.

*Michaelson & Stanzler, Milton Stanzler,* for petitioner.

*Ambrose W. Carroll,* for respondent.