PHILOMENA D'IORIO *vs.* UNITED STATES RUBBER COMPANY.

FEBRUARY 26, 1959.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

PAOLINO, J. This is an employee's original petition for workmen's compensation and medical expenses. After a hearing before a trial commissioner a decree was entered granting the relief prayed for. Thereafter the respondent appealed to the full commission which entered a decree affirming certain findings of the trial commissioner, but modifying his findings as to partial incapacity. The case is here on appeals by both parties from such decree.

By agreement of counsel the instant appeals were heard before us together with an appeal by the employee in another proceeding between the same parties. In the latter case, Equity No. 2729, the employee claimed an appeal from a final decree of the workmen's compensation commission denying and dismissing her petition to review her

decreased earning capacity. For reasons of clarity we have treated the cases separately. See our opinion filed this day in *D'Iorio* v. *United States Rubber Co.*, 88 R. I. 369, 148 A.2d 683.

The petitioner testified in substance that on October 3, 1955, while working at her regular job making lifeboats, something snapped in her neck causing severe pain; that she was treated at the plant dispensary and continued to receive medical attention there every day up to February 1956, except for a period when she worked without such treatments on the advice of the plant doctor. She also testified that she continued on her regular job until February 1956 when, due to lack of work, she was transferred to another department as an inspector; that she worked at this job for about two months; and that due to a cutback of work in this department she was given other odd jobs which she continued to perform until December 28, 1956 when she was laid off because of lack of work. Although she admits that she continued to work for approximately fourteen months after October 3, 1955, she testified that on the doctor's advice she performed light work but that she did this with discomfort and pain.

It also appears from the evidence that on March 14, 1956 petitioner was referred by respondent to Dr. G. Edward Crane, an orthopedic surgeon, for examination and treatment; that he treated her on an average of once a week from that time up to a week before the instant case was heard in the workmen's compensation commission; and that his treatment and care included the use of a cervical collar from March to August 1956, examination at the Lahey Clinic in Boston, examinations by another orthopedic specialist Dr. William V. Hindle, and hospitalization for traction, physiotherapy and other treatment from April 3 to April 20, 1957 at the Rhode Island Hospital.

The petitioner also testified that on December 7, 1956, while she was being driven from Dr. Crane's office in one

of respondent's cars, the driver "slammed his brakes on" in order to avoid an accident; that she banged her head near the windshield visor and the impact threw her backwards; that this caused more pain and made her injury worse; and that she was out of work two days following the automobile incident. She also testified that she could do hardly any of her household duties; that her mother-in-law performed these for her and her husband did the heavy work; that she had severe pains twenty-four hours a day; and that her condition grew worse following the automobile incident and had so continued up to the time of the hearing.

Although she stated that because of the injury she had lost about 130 to 140 hours between October 3, 1955 and December 28, 1956, she admitted that some weeks she did not work 40 hours because of lack of work. She testified that although she could not do her regular work she was willing to try light work. But she admitted that since she was laid off on December 28, 1956 she had not looked for work of any kind.

Doctor Crane testified for petitioner. When questioned about her ability to work in March 1956 when he first examined her, he stated that was a simple decision to come to because at that particular time she was working. However, he testified that she had restricted work capacity from the time he first saw her up to the date of the hearing, except for the period of hospitalization from April 3 to April 20, 1957 when she was totally incapacitated for work. He diagnosed her condition as an ulnar nerve neuritis, with symptoms consistent with a cervical radiculitis and evidence that she is suffering from a rheumatoid type of arthritis. He stated that the original onset of her condition was related to the straining injury which she sustained on October 3, 1955; that there was some causal connection between her present work restriction and that injury; and that he did not think the automobile incident of December 7, 1956 was a significant factor in her case. He also testified that

although she had discomfort she was able to do restricted work which would not put excessive strain on her right upper extremity; that if a suitable job were available it would be to her advantage to return to work; and that she would be able to do the work she was doing after March 1956, although she might experience some physical discomfort.

Two medical reports of Dr. Hindle and a transcript of her wages from the time of the injury to the date of her layoff were the only other evidence presented by petitioner. The wage transcript contained a record of petitioner's earnings for a period of sixty-three weeks and showed that petitioner earned during such period a total of $4,413.87, or an average of $70.06 per week. The only evidence presented by respondent was two medical reports from the Lahey Clinic.

On the basis of this record the full commission entered a decree finding in substance that petitioner had sustained a compensable straining injury to the neck on the right side and that her average weekly wage at the time of such injury was $75.19. The decree also contained a finding that as a result of her injury she had been partially incapacitated for work from December 28, 1956 to April 3, 1957, totally incapacitated from April 3 to April 20, 1957 while she was hospitalized, and partially incapacitated thereafter.

The main issues in this appeal are based on the commission's findings in paragraphs 6 and 7 of its final decree. Although it found in paragraph 6 that petitioner had failed to prove by a fair preponderance of the evidence that she had suffered any loss of earning capacity from the date of the injury to the date of her layoff, about fourteen months later, nevertheless in paragraph 7 it found that petitioner was able to perform suitable restricted duties consistent with her physical condition from December 28, 1956 to April 3, 1957 and after her discharge from the hospital on April 20, 1957.

Under the authority granted by the first proviso of general laws 1956, §28-33-18, in paragraph 7 the commission fixed the dollar value of petitioner's earning capacity at not less than $60 per week. For such periods of partial incapacity respondent was ordered to pay petitioner $9.12 per week. This was 60 per cent of the difference between her average weekly wage of $75.19 at the time of the injury and the sum of $60 per week which the commission estimated her earning capacity to be after the layoff. In addition she was awarded total compensation for the period she was in the hospital and medical and hospital expenses in accordance with the act.

It appears from petitioner's reasons of appeal that she is appealing only from the findings in paragraph 7 and the amount of the award based thereon. On the other hand, respondent's reasons of appeal challenge the legality of all the findings and orders in said decree with the exception of the finding in paragraph 6. Thus it is clear that the finding in paragraph 6 has not been appealed by either party. The respondent contends that the findings which it is attacking are against the law and the evidence. Both parties contend that the findings in paragraph 7 and the orders based thereon are likewise against the law and the evidence.

The petitioner argues that her earning capacity during the periods in question were less than $60 per week. On the other hand respondent claims that petitioner has failed to prove the loss of any earning capacity during such periods, but that in any event even if she has proved a diminished earning capacity the commission erred in finding an earning capacity of not less than $60 per week, since the evidence clearly shows an earning capacity in excess of such sum.

While we are not called upon to pass on the finding in paragraph 6, since neither party has appealed therefrom, it is nonetheless clear that the commission was justified in finding that petitioner had failed to prove any loss of earn-

ing capacity from the date of the injury to the date of her layoff. Her average weekly wage at the time of the injury was $75.19. The wage transcript shows that the average of her earnings between the date of the injury and the date of the layoff amounts to $70.06 per week. The difference in the average wage before the injury and the average wage between the injury and the layoff has been explained by petitioner's own testimony that because of lack of work she did not work forty hours a week every week after the injury and before her layoff. While it is true she testified that following the injury she did light work which she performed with discomfort and pain, the fact remains that there is evidence to sustain the finding that she lost no earning capacity during that time because of the injury. *Thornlimb v. D. F. Farrell & Sons, Inc.*, 85 R. I. 157, 128 A.2d 333; *Laptew v. Moore Fabrics, Inc.*, 84 R. I. 280.

However, it does not follow that petitioner has no basis for compensation after the date of her layoff. After carefully reading the transcript we are convinced that the commission's finding of partial incapacity after the layoff is supported by petitioner's testimony of her physical condition as well as by the testimony of Dr. Crane that her present condition had its onset from the straining injury of October 3, 1955. We are also convinced that there was some connection between that injury and the work restriction which she had when the doctor first examined her and which she continued to have up to the time of the hearing in May 1957.

Moreover, although Dr. Crane testified that he did not believe the automobile incident of December 7, 1956 played a significant part in her condition, nevertheless the commission had before it her own testimony that she felt worse after such incident; that she was unable to perform her household duties even at the time of the hearing; and that she was willing to try to perform work which she could do consistent with her physical condition. In our opinion the

findings of partial incapacity and causation are supported by the evidence and, in the absence of any proof of fraud, are binding on us. G. L. 1956, §28-35-33. The fact that petitioner was laid off solely on account of lack of work does not mean that she could not prove partial incapacity thereafter. See *Shoren* v. *United States Rubber Co.*, 87 R. I. 319, 140 A.2d 768.

The remaining question relates to the extent of the loss of her earning capacity in terms of money value. Both parties have raised this issue. The petitioner in substance contends that the commission misconceived the evidence and the law in finding that she had an earning capacity of not less than $60 per week between December 28, 1956 and April 3, 1957 and subsequent to April 20, 1957. She contends that the evidence shows that her earning capacity during those periods was less than $60 per week. We find nothing in the record to indicate that the commission overlooked any of the material evidence. In view of Dr. Crane's testimony concerning the automobile incident of December 7, 1956 we feel the commission was justified in disregarding the alleged effects of such incident. The petitioner also contends that the commission erred in not applying the doctrine set forth in *Imperial Knife Co.* v. *Gonsalves*, 86 R. I. 68, 133 A.2d 721, and *Berry Hill Corp.* v. *Flynn*, 86 R. I. 224, 134 A.2d 157. In view of petitioner's testimony that she did not look for work of any kind after her layoff on December 28, 1956, during which time her status was that of an injured employee with partial earning capacity, it is our opinion that, because those cases are distinguishable on their facts from the instant case, the doctrine set forth therein applying the provisions of the second proviso in G. L. 1956, §28-33-18, to the facts of those cases does not apply to the case at bar at this stage of the proceedings.

In our opinion this case is governed by the provisions of the first proviso of §28-33-18, since it is clear that, although petitioner proved she was partially incapacitated for the

periods above mentioned, she was unable to prove the amount of her loss of earning capacity with reasonable definiteness. In such circumstances, under the provisions of the first proviso the commission has the power to determine the extent of her diminished earning capacity. It is restriced only by the limitations set forth in said proviso.

On this view we shall next consider petitioner's contention that her earning capacity for such periods was less than $60 per week and respondent's contention that her earning capacity was in excess of said amount. The respondent contends that if we hold that the evidence supports a finding of partial incapacity and that the commission has the power under §28-33-18 to fix the dollar value on the extent of the loss of earning capacity under the first proviso of said section, nevertheless the commission erred in its finding on the extent of such loss. This contention is based on its claim that petitioner has failed to sustain her burden of proving with reasonable definiteness the extent of her partial incapacity.

The respondent relies on our decision in *Panzarella* v. *United States Rubber Co.*, 81 R. I. 149, where this court reduced a superior court award of maximum partial compensation and fixed the amount of such compensation by taking the average of four weeks' wages in a job which the employee held with another employer after she had been laid off by her original employer for lack of work. In the instant case, however, the commission had no evidence before it of any wages earned after the layoff. In our judgment this difference in the evidence is sufficient to differentiate the instant case from the *Panzarella* case and we conclude that the case at bar is not controlled by that case.

We are therefore of the opinion that in the instant circumstances the commission was justified in applying the first proviso of §28-33-18, and further that its findings on the extent of the petitioner's partial incapacity are supported by the evidence. We do not agree with respondent's

contention that the only evidence on this issue before the commission was the wage transcript. The petitioner's testimony of her restricted ability to work after her layoff and similar testimony by Dr. Crane furnished sufficient evidence to support the commission's finding that she had an earning capacity of not less than $60 per week for the periods in question. The pertinent findings being thus supported by legal evidence are conclusive under the act.

The appeals of both parties are denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Michaelson & Stanzler, Milton Stanzler,* for petitioner.

*Ambrose W. Carroll,* for respondent.