693 A.2d 543

N.G., PETITIONER–RESPONDENT, v. STATE OF NEW
JERSEY, DIVISION OF YOUTH AND FAMILY
SERVICES, RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 4, 1996—Decided May 16, 1997.

Before Judges KING and LOFTUS.

*Peter Verniero,* Attorney General, attorney for appellant (*Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Michael J. Haas,* Senior Deputy Attorney General and *Linda A. Lockard–Phillips,* Deputy Attorney General, on the brief).

*Balk, Oxfeld, Mandell & Cohen,* attorneys for respondent (*Denzil R. Dunkley,* of counsel; *Gail Oxfeld Kanef,* on the brief).

The opinion of the court was delivered by

LOFTUS, J.A.D.

The State of New Jersey, Division of Youth and Family Services (DYFS), appeals from a decision of the Division of Workers' Compensation which held that petitioner, N.G., was entitled to compensation for injuries sustained in an incident on June 21, 1992, because the injuries arose "out of and in the course of employment." The parties stipulated that petitioner had suffered a twenty-five percent partial total permanent psychiatric disability, giving rise to 150 weeks of disability at the rate of $124 per week, for a total of $18,600.

On this appeal, DYFS contends:

THE ASSAULT ON THE PETITIONER BY HER NEIGHBOR'S BOYFRIEND INSIDE HER APARTMENT AND LATER IN HER NEIGHBOR'S APARTMENT WAS NOT AN INCIDENT "ARISING OUT OF AND IN THE COURSE OF HER EMPLOYMENT." THE DECISION OF THE JUDGE OF COMPENSATION SHOULD THEREFORE BE REVERSED.

A. Petitioner's Disability Did Not Result From an Incident Arising "In the Course Of" Her Employment.

B. Petitioner's Disability Did Not "Arise Out of" Her Employment.

We have considered the applicable law in light of the evidence presented and conclude that DYFS's contention is without merit. We affirm.

The facts establish that N.G. was employed as a family service specialist in the Division of Youth and Family Services. She investigated incidents of child abuse and neglect and provided services to families in crisis. She volunteered to work weekends for the Special Response Unit. This required her to be on call

twenty-four hours a day during the weekends. Her work in this respect began at 5 p.m. on Friday and ended at 9 a.m. on Monday morning. N.G. was paid an additional $99 for being on call over the weekend, plus seventeen dollars an hour for time spent answering a call and for completing the corresponding paperwork.

At 10 p.m. on Saturday, June 20, 1992, N.G. was assigned to answer a call at Jersey City Medical Center. After completing her duties with regard to the call, N.G. returned to her residence in Newark at approximately 1:30 a.m. on Sunday, June 21, 1992. When N.G. arrived at her residence, a two-family home, she encountered a man in the common foyer area of the house. He attempted to engage N.G. in conversation and she declined to participate. She went up the stairs, entered her apartment on the second floor, and closed the door. Almost immediately after this, the man climbed the steps and knocked on her door. Before she opened the door she asked, "who is it?" The man identified himself as "Louis" and insisted on talking to her. N.G. told him that she did not know him. At some point she opened her apartment door but did not unlock the chain. She told the man that she did not want to talk to him and closed the door.

The man, who had a knife, and was wearing only underwear, pushed the door in. He raped N.G. in her apartment and then dragged her down the stairs. He raped her again in his girl-friend's apartment. He threatened to kill N.G. if she reported the attack to the authorities. When he left she called the police. She was taken to United Hospital in Newark by ambulance.

Subsequently, N.G. learned that the man who raped her was her downstairs neighbor's boyfriend whom she had seen twice before in the building, but to whom she had not spoken. N.G. had lived in the building twenty-one days prior to the rape.

N.G. testified that when she returned home at 1:30 a.m. she intended to complete her paperwork that morning or later that day, because it was her responsibility to complete the paperwork

as soon as possible. She also intended to handle any calls which came in on Sunday.

N.G. filed a claim petition with the Division of Workers' Compensation. A trial was held. The parties agreed to bifurcate the trial so that the issue of compensability would be determined first, followed by a resolution of the extent and permanency of disability. The judge concluded that the injury was compensable. The parties then agreed to settle the nature and extent of permanent disability. As part of the settlement, DYFS reserved the right to appeal the issue of compensability.

The standard of review in an appeal from a decision of a judge of the Division of Workers' Compensation is whether there was substantial, credible evidence in the record to support the findings and conclusions of the judge. *Close v. Kordulak Bros.*, 44 *N.J.* 589, 599, 210 *A.2d* 753 (1965); *Peterson v. Hermann Forwarding Co.*, 267 *N.J.Super.* 493, 503, 631 *A.2d* 1274 (App.Div.1993), *certif. denied*, 135 *N.J.* 304, 639 *A.2d* 303 (1994).

*N.J.S.A.* 34:15–7 provides in relevant part:

When employer and employee shall by agreement, either express or implied, ... accept the provisions of this article[,] compensation for personal injuries to ... such employee by accident arising out of and in the course of employment shall be made by the employer....

The words "arising out of" and "in the course of" employment were defined in *Rafferty v. Dairymen's League Coop. Ass'n*, 16 *N.J. Misc.* 363, 366, 200 *A.* 493 (Dep't Labor 1938) as follows:

The words "out of" relate to the origin or cause of the accident; the words "in the course of," to time, place and circumstances under which the accident took place. The former words relate to the character of the accident, while the latter words relate to the circumstances under which the accident took place. An accident comes within the latter words if it occurs while the employee is doing what a [person] so employed may reasonably do within a time during which he [or she] is employed and at a place where he [or she] may reasonably be during the time to do that thing. The accident, in order to arise "out of" the employment, must be of such nature the risk of which might have been contemplated by a reasonable person when entering the employment, and incidental to it. A risk is incidental to the employment when it belongs to or is connected with what [an employee] has to do in fulfilling his [or her] contract of service.

This language has been cited with approval by this court and our Supreme Court. *Coleman v. Cycle Transformer, Corp.*, 105 *N.J.* 285, 288–89, 520 *A.*2d 1341 (1986); *Shaudys v. IMO Indus.*, 285 *N.J.Super.* 407, 410–11, 667 *A.*2d 204 (App.Div.1995); *Daus v. Marble*, 270 *N.J.Super.* 241, 246–47, 636 *A.*2d 1091 (App.Div.1994).

In the case before us, the judge of the Division of Workers' Compensation analogized the circumstances to *Paige v. City of Rahway*, 74 *N.J.* 177, 376 *A.*2d 1226 (1977), a case in which an employee was awarded workers' compensation for injuries stemming from an attack by an unknown assailant shortly after arriving home after his regular shift, and while the employee remained "on call." The judge also relied on the positional risk test announced by the Supreme Court in *Coleman v. Cycle Transformer Corp.*, 105 *N.J.* 285, 291, 520 *A.*2d 1341 (1986), when she described the nature of the risk which caused the employee's injuries as a "neutral risk" and concluded that "but for the fact that [the employee] was involved in this employment, the rape would not have happened." *See* 1 A. Larson, *Workmen's Compensation Law*, §§ 6.50 and 7.30 (1985).

The judge found:

It's very clear in this case that but for the fact that Petitioner was involved in this employment, the rape would not have happened. Although it's a "neutral risk", but for the employment, it would not have happened.

The petitioner states in [her] brief the employer is the State of New Jersey with over-arching and fundamental responsibility for the health, safety and welfare of the public. One aspect of the functional attributes of the State is to employ people in sufficient numbers so as to be able to provide certain services to the public at any hour of the day or night, every day of the week.

Therefore, the petitioner had to be available in the wee hours of the morning, and were it not for the fact that she was returning at that hour in the morning, this person who raped her would not have seen her. And I think that it's very important that the person was undressed when he came to the apartment because I think it's all part of one incident; she walked through the door to the lobby and that's when it started. I think the actual rape itself was set in motion when she walked through the door even before she got to her apartment, and that's the reason that I feel that the "but for" test and the positional-risk test prevails and, in fact, this incident did arise out of and in the course of her employment. So, I do find that the fact this matter is compensable.

In this case, the injuries resulted from an incident in the course of N.G.'s employment as a family service specialist in the Division

of Youth and Family Services. She was engaged in her employment responsibilities with the Special Response Unit over the entire weekend. She responded to a call at 10 p.m. on Saturday evening and returned from that call at 1:30 a.m. on Sunday morning. She still had to complete the paper work in connection with that call and was expected to work on Sunday. But for the fact that she went out to respond to a call received from the Special Response Unit, she would not have returned at 1:30 a.m. and walked through the hallway—in the view of her assailant who reacted in a criminal manner by raping her. She was doing what a person might reasonably have been doing while employed as a family service specialist in the Division of Youth and Family Services, within a time during which she was employed with the Special Response Unit, and at a place where she reasonably should have been. The incident likely would not have occurred if she had not been engaged in her employment responsibilities.

We conclude that the decision of the judge of Workers' Compensation, who found that the injury was compensable, was supported by substantial, credible evidence in the record, was not arbitrary, capricious or unreasonable, and was legally sound.

*Affirmed.*