1998 OK 11

**WAL–MART STORES, INC., and National Union Fire Insurance, Petitioners,**

v.

**Terri L. REINHOLTZ, and the Workers' Compensation Court, Respondents.**

No. 86623.

Supreme Court of Oklahoma.

Feb. 3, 1998.

Dissenting Opinion Corrected Feb. 5, 1998.

Brian R. Berry, Jody Nathan, Tulsa, for Petitioner.

Jerry V. Beavin, Oklahoma City, on the briefs, for Petitioner.

J.L. Franks, Kathryn Burgy, Tulsa, for Respondents.

SIMMS, Justice:

¶ 1 This case concerns the workers' compensation claim of Terri Reinholtz for disability based on psychological overlay.

¶ 2 Claimant, a Wal–Mart employee, was forcefully and brutally raped by her supervisor while at work in the early working hours of February 19, 1995. The assailant-supervisor had been in the employ of Wal–Mart for over ten (10) years. Claimant was employed in an assistant customer service position at the automotive department at a Tulsa area store. Her duties included opening and closing the automotive store, securing the register and conducting inventory assessments. The rape occurred in the automotive store at Wal–Mart, on a morning when Claimant was scheduled to open the store and would have been there alone for several hours.

¶ 3 Claimant suffered a back injury during the course of the rape, when she was pinned to the wall and thrown onto the floor. Additional injuries to the head and left arm were reserved for future hearing and are not at issue in the instant cause. Claimant does not now receive treatment for her back injury, but has sought continuous treatment for her psychological overlay and a skin rash for which there is no apparent physical cause.

¶ 4 The trial court found Claimant's back injury compensable and ordered benefits based upon Claimant's psychological overlay claim. Wal–Mart appealed this order to a three judge panel, where the rate of compensation was modified and certain probative value objections were ruled upon, but the trial court's order remained essentially unchanged. The Court of Civil Appeals vacated the award insofar as it awarded benefits for Claimant's psychological overlay and continuing treatment for the skin rash. This Court granted certiorari to address the issue of compensability of psychological overlay in the context of the forcible rape experienced by Claimant.

¶ 5 Claimant asserts on certiorari that rape is a physical injury, and as such the psychological disability she suffers as a result of that physical work related injury is compensable under the Workers' Compensation Act.

¶ 6 For the reasons herein stated, we find Claimant's rape was an accidental injury arising out of and in the course of her employment and sustain the trial court's award with regard to the psychological overlay benefits and treatment for Claimant's skin rash.

¶ 7 The trial court's award to Claimant with regard to her back claim was sustained by the Court of Civil Appeals and we do not disturb that award.

## I. A Willful, Intentional Act as an Accidental Injury.

¶ 8 A compensable work related disability under the Workers' Compensation Act must be the result of an accidental injury which arises out of and in the course of a claimant's employment. 85 O.S.1992 Supp. § 3(7)(a).

¶ 9 Although the rape committed against Claimant was a willful and intentional criminal act on the part of the assailant, it is considered accidental for the purposes of the Workers' Compensation Act.

"When a willful injury is inflicted by a third party, who is the aggressor, upon a workman discharging the tasks he is engaged to perform, and the assault is not motivated solely by personal animosity, wholly disconnected from the employment, the resulting injury is regarded as accidental and as having arisen out of and in the course of employment. *Samara v. Lusk*, Okl., 364 P.2d 1113, 1114; *Royster v. McCoy*, Okl., 293 P.2d 587; *Eason Oil Co. et al. v. Neal*, 166 Okl. 40, 26 P.2d 197;

*Town of Granite et al. v. Kidwell et al.,* Okl., 263 P.2d 184."

*Mullins v. Tanksleary,* 1962 OK 239, 376 P.2d 590 (citations in original); *See also Burrell v. Prewitt,* 1968 OK 128, 445 P.2d 279, 280–81. The accidental nature of a willful injury is examined from the perspective of the injured worker rather than the aggressor or assailant responsible for the injury. As a result, Claimant's injury in the instant cause is properly viewed as an accidental injury in the context of workers' compensation.

¶ 10 Further, given the fact the injury was caused by an employee of the Petitioner, Wal–Mart, and that Claimant's employment at Wal–Mart put her in greater danger than those in the general public, it is clear the injury arose out of the employment. *American Management Sys. v. Burns,* 1995 OK 58, 903 P.2d 288, 291; *Superior Stucco v. Daniels,* 1995 OK 127, 912 P.2d 317, 318.

> "[O]nly injuries having as their source a risk not purely personal but one that is reasonably connected with the conditions of employment shall be deemed to arise out of the employment."

85 O.S.1992 Supp. § 3(7)(a). In addition, there is evidence in the record that Claimant's assailant, who was also her supervisor, used his knowledge of the employee scheduling to attack Claimant while she was alone, and while the automotive department was closed to the public.

■ ¶ 11 In the course of employment refers to the time, place and circumstances under which an accidental injury occurs. *Thomas v. Keith Hensel Optical Labs,* 1982 OK 120, 653 P.2d 201, 202. The incident clearly occurred in the course of Claimant's employment, because it happened at Petitioner's place of business, while Claimant was employed with Petitioner and engaged in tasks pursuant to her work as an employee of Petitioner.

## II. Necessary Relationship Between Psychological Overlay and Physical Injury.

¶ 12 The Act requires any psychological or mental injury be accompanied by physical injury in order to receive disability benefits for a debilitating psychological condition:

> " 'injury' or 'personal injury' shall not include mental injury that is unaccompanied by physical injury."

85 O.S.1992 Supp. § 3(7)(c).[1]

¶ 13 *Fenwick v. Oklahoma State Penitentiary,* 1990 OK 47, 792 P.2d 60 (Okla.1990) marks one of the Court's more recent efforts to comprehensively address the issue of compensable psychological overlay and its necessary relationship to work related physical injury. *Fenwick* predates the advent of the Legislature's 1992 revision of § 3(7)(c), however, the lack of physical injury in *Fenwick* makes it unlikely that § 3(7)(c) would have been a factor even had it applied in 1990.

¶ 14 Claimant–Fenwick was a psychological assistant at the state penitentiary in McAlester, Oklahoma. In August 1979, Fenwick was involved in a hostage situation at the prison where he negotiated the release of three hostages in exchange for himself. After being held for over four hours, Fenwick was released without any evidence of physical injury, in contrast to the instant case.

¶ 15 Fenwick returned to work shortly thereafter, but was eventually diagnosed with *"depression, generalized anxiety disorder and post-traumatic stress disorder." Id.* at 61. According to the medical evidence and Fenwick's own testimony, Fenwick's psychological disorder was the result of the hostage ordeal. In sustaining the trial court's order denying workers' compensation benefits to Fenwick, the Court cited the long-standing rule that:

> " '[a] disease of the mind or body which arises in the course of employment, with nothing more' is not an accidental injury and, thus, not compensable."

---

1. 85 O.S.1998 Supp. § 3(10)(c) has taken the place of § 3(7)(c) which was in effect at the time of Claimant's workers' compensation claim. Section (c) now reads as follows:
   "Injury" or "Personal injury" shall not include mental injury that is unaccompanied by physical injury, except in the case of rape which arises out of and in the course of employment[.]"
   The new statute makes an exception to the required accompaniment of physical injury in cases of rape arising out of and in the course of employment[.]"

*Id.* at 62 (quoting *Keeling v. State Indus. Court*, 1964 OK 25, 389 P.2d 487, 491, which quoted *Shoren v. United States Rubber Co.*, 87 R.I. 319, 140 A.2d 768 (1958)).

■ ¶ 16 Petitioners argue that *Fenwick* precludes a psychological overlay award in the instant case, because Claimant's psychological disorder is the result of the traumatic event of rape, as *Fenwick's* post-traumatic stress disorder was the result of the trauma of being held hostage. However, Claimant's injury at the hands of the rapist has the necessary element of physical injury accompanying psychological injury, which was lacking in *Fenwick.*

¶ 17 Petitioners also assert that *Teel v. Tulsa Mun. Employees*, 1993 OK 74, 859 P.2d 1079, 1080 controls the instant case. Importantly, *Teel* addresses an injury which occurred prior to the effective date of the 1992 statutory revision. *Teel* required that *"the psychological injury must result from or arise out the physical employment-related injury in order to be compensable* [.]" *Id.* at 1080. The Court of Civil Appeals used *Teel* in deciding the instant cause, citing it for the proposition that simply the accompaniment of physical and psychological injury is insufficient to support a claim under the Act.

¶ 18 The Legislature's 1992 revision of the statute carves out those mental injuries *"unaccompanied"* by physical injury. The instant cause clearly entailed physical injury within the scope of the statute, which is accompanied by psychological injury, Claimant being unable to function outside her home as she had before the events of February 19, 1995. This accompaniment is all the statute requires. The Court of Civil Appeals attempt to place an additional requirement that Claimant's mental injury arise from her injury to the back, instead of resulting from the physical trauma of rape, is not persuasive as it obligates Claimant to establish more than the Legislature has required. As written, 85 O.S.1992 Supp. § 3(7)(c) does not prevent Claimant from supporting a mental injury claim upon the results of the accidental injury, the forcible rape; such rape also included the essential element of physical injury to accompany the mental infirmity.

¶ 19 Under the set of circumstances in the instant case, the statutorily required accompaniment of compensable physical injury, which includes Claimant's injury to the back, and psychological injury exists and resulted from accidental injury. Claimant's resulting psychological disability is within the parameters of the Workers' Compensation Act.

¶ 20 The record contains competent medical evidence and testimony of Claimant's psychological disability, as well as competent evidence regarding her back injury and the on-going skin rash. Where competent evidence supports the decision of the Workers' Compensation Court, we will not disturb the order here on appeal. *Parks v. Norman Mun. Hosp.*, 1984 OK 53, 684 P.2d 548.

¶ 21 Certiorari having previously been granted, we vacate the opinion of the Court of Civil Appeals, and the Order of the Workers' Compensation Court is SUSTAINED.

KAUGER, C.J., and HODGES, LAVENDER, ALMA WILSON and WATT, JJ., concur.

SUMMERS, V.C.J., concurs in result.

HARGRAVE and OPALA, JJ., dissent.

OPALA, Justice, dissenting.

¶ 1 The court holds that claimant's rape by her co-employee constitutes an accidental on-the-job injury and declares that she may be (a) awarded additional compensation for psychological overlay and (b) allowed treatment for a skin rash. I dissent from today's pronouncement and from the court's disposition of the claim.

I

**THIS COURT'S CERTIORARI RECONSIDERATION OF THE COMPENSABILITY OF CLAIMANT'S INJURY BY RAPE IS BARRED BY THE SETTLED LAW OF THE CASE**

¶ 2 The Court of Appeals *ruled* that claimant's back injury by sexual assault *did* arise out of her employment and is hence compensable. Neither party retendered this issue for *certiorari* review. The court's discussion of the rape's compensability is hence misplaced. This is so because that issue is

now settled law of this case.[1] The employer failed to preserve it by a petition for *certiorari*. As held in *Hough v. Leonard,*[2] an issue not presented by a party's petition for certiorari will not be considered, unless the Court of Civil Appeals had failed to reach it on appeal. The appellate court declared the rape to be compensable. By the settled-law-of-the-case doctrine this court is hence most ill-advised in, if not indeed prevented from, revisiting the barred issue on certiorari.

## II

### THE COURT'S REFERENCE TO RAPE IN THE 1997 AMENDMENT OF SECTION 3, EFFECTED BY THE LANGUAGE ADDED TO SECTION 3(10)(c), NEITHER GOVERNS THIS CLAIM NOR DECLARES RAPE TO BE COMPENSABLE ABSENT PROOF THAT THE SEXUAL ATTACK AROSE OUT OF EMPLOYMENT

¶3 The 1997 amendment to 85 O.S.1991 § 3[3] became effective November 1, 1997. *It does not govern this claim.* Unless otherwise prescribed by the legislature, claims are governed by the law in force at the time the accidental injury for which compensation is sought occurred.[4] The court's opinion references the amendment *sans* clarification, wrongly implying that it may be relevant to this claim.

¶4 Even if the amendment applied, the result would be the same. The statute, which must be read in conjunction with the risks in interplay, does not declare rape to be compensable *per se*, but explicitly subjects

injury by rape to the two-prong requirement that generally governs compensability. By language *added* to § 3(10)(c) in 1997[5] the legislature authorized the award of compensation for mental injury not accompanied by physical trauma for those rape claims *which arise out of and in the course of employment.*[6] The amendment *does not* pronounce all injuries by rape compensable. Once the statutory test for on-the-job nexus is met, a claim's compensability for mental injury is established, although claimant's harm is not accompanied by physical injury.

¶5 If indeed it was established by proof that claimant's rape arose out of her employment and that the amendment was in effect when she was injured, there would be no doubt that an additional award for mental injury would be her due. My concern here is *not* with the court's allowance of compensation for claimant's psychological overlay and skin rash treatment. The sole basis for my dissent is that the court enlarges an award that is compensable *solely because it is protected by settled law of the case. The record utterly fails to show a nexus between rape and the victim's employment.*

## III

### CLAIMANT'S RISK OF HARM BY RAPE DID NOT ARISE OUT OF HER EMPLOYMENT

¶6 The court correctly notes that a compensation claimant must satisfy a two-pronged statutory test[7] by showing that the accidental harm to her body 1) occurred *"in the course of the employment,"*[8] *and* 2)

1. *See Morrow Development Corp. v. American Bank and Trust,* 1994 OK 26, 875 P.2d 411, 413.

2. 1993 OK 112, 867 P.2d 438.

3. 1997 Okl. Sess. L., Ch. 361, § 3. The provisions of 85 O.S.Supp.1997 § 3(10)(c) are:
   " 'Injury' or 'personal injury' shall not include mental injury that is unaccompanied by physical injury, *except in the case of rape which arises out of and in the course of employment;"* (Added language in italics).

4. *Lee Way Motor Freight, Inc. v. Wilson,* 1980 OK 48, 609 P.2d 777, 779; *United Iron Works v. Smethers,* 159 Okl. 105, 14 P.2d 380 (1932).

5. See italicized language *supra* note 3.

6. 1997 Okl. Sess. L., Ch. 361, § 3.

7. " 'Injury' or 'personal injury' means only *accidental* injuries *arising out of* and *in the course of* employment...." 85 O.S. Supp.1997 § 3(10)(a) (Emphasis added).

8. The term "in the course of employment" relates to the time, place, or circumstances under which the injury is sustained. *Darco Transportation v. Dulen,* 1996 OK 50, 922 P.2d 591, 594; *Thomas v. Keith Hensel Optical Labs,* 1982 OK 120, 653 P.2d 201, 203; *R.J. Allison, Inc. v. Boling,* 192 Okl. 213, 134 P.2d 980, 982 (1943).

"*arose out of the employment.*" [9] Claimant met the first prong; she was clearly *in the course of* her employment. According to undisputed proof in the record, she was injured while performing the duties of her job. The second prong—that of *arising out of* the employment, *which was the core issue in contention* before the Court of Civil Appeals, stands utterly *sans* proof.

¶ 7 Whether an employee's injury *arose out of a risk reasonably connected to the employment* presents a fact issue for the trial judge.[10] Before the 1986 amendment to the Workers' Compensation Act, the provisions of 85 O.S.1981 § 27 operated to *shift to the employer* the burden of producing evidence upon the critical elements of proof— i.e., that the causative risk was purely personal and unenhanced by employment-related hazards.[11] Section 27 was eliminated by its repeal in 1986. No part of that burden may now be passed to the employer.[12] The *onus* of proving *all* critical elements of the claim is presently cast on the claimant alone.[13]

¶ 8 Another 1986 amendment of 85 O.S. 1981 § 3(7)[14] requires that the *source* of the compensable injury be *employment related*—

*i.e., be one that does not stem from a purely personal risk.*[15] An injury cannot be compensable *solely* because the worker, while in the course of employment, was exposed to the causative risk of harm.[16] A claimant must affirmatively demonstrate a causal nexus between the injury and some *compensable* risk. As the court explained in *Burns*, "[t]he law demands that the risk responsible for injury be causally connected to employment. . . ."[17]

¶ 9 The law recognizes three different categories of risk associated with injuries claimed to be compensable: 1) those so uniquely associated with employment that they may be regarded as distinctly employment related; 2) those *purely personal* to the worker; and, 3) those that are neutral.[18] An intermixture of employment-related hazards with those that are strangers to the work milieu might be regarded as a fourth category.[19] Risks that are *solely* connected with job performance are *employment related.*[20]

¶ 10 Among *personal risks* are crimes intentionally inflicted upon the employee (who happens to be on the job site) by persons who harbor *personal ill will.*[21] In this latter

---

9. The phrase "arise out of employment" contemplates the causal connection between the injury and the risks incident to employment. *Darco, supra* note 3 at 594; *Hensel, supra* note 3 at 202; *Richey v. Commander Mills, Inc.*, 1974 OK 47, 521 P.2d 805, 808; *Graham v. Graham*, 1964 OK 68, 390 P.2d 892, 893; *Stanolind Pipe Line Co. v. Davis*, 173 Okl. 190, 47 P.2d 163, 164 (1935).

10. *American Management Systems v. Burns*, 1995 OK 58, 903 P.2d 288, 291.

11. *Id.*

12. *Id.*

13. *Id.*

14. Now codified at 85 O.S.Supp.1997 § 3(10)(a).

15. *Id.* at 292.

16. *Id.*

17. *Id.* (emphasis in original).

18. *Stroud Mun. Hosp. v. Mooney*, 1996 OK 127, 933 P.2d 872, 876 (Opala, J., concurring), citing Michael E. Utter, 'Arising out of and in the Course Of ...' (a publication of the Oklahoma Trial Lawyers Association, Nov. 1, 1996), "All risks causing injury to a claimant can be brought within three categories: risks distinctly associated with the employment, risks personal to the claimant, and neutral risks—i.e., risks having no particular employment or personal character. Harms from the first are universally compensable. Those from the second are universally noncompensable. It is within the third category that most controversy in modern compensation law occurs. The view that the injury should be deemed to arise out of employment if the conditions of employment put claimant in a position to be injured by the neutral risk is gaining increased acceptance. When employment and personal risks concur to produce injury, the injury arises out of the employment, since the employment need not be the primary cause, but need only contribute to the injury." 1 Larson's Workmen's Compensation Law § 7.00 at 3–12 (1996); as cited by *Utter.*

19. 1 Larson's Workmen's Compensation Law § 7.40 at 3–14 to 3–15 (1996).

20. 1 Larson's Workmen's Compensation Law § 7.10 at 3–12 to 3–13 (1996).

21. *Stroud Mun. Hosp. v. Mooney*, 1996 OK 127, 933 P.2d 872, 877 (Opala, J., concurring).

category, the *employment is deemed irrelevant* to the harm suffered, and compensation may not be available.[22] The so-called *neutral risks,* such as weather conditions, are neither distinctly occupational nor personal, and thus present fact questions to be resolved in each case.[23]

¶ 11 Claimant's case shows no *nexus* that would relate her rape injury to a job-created or to an employment-increased risk. Legal commentators point out that rape is ordinarily the clearest example of a *personal risk* motive.[24] *Absent some extrinsic motivating factor,* rape itself may be generally defined as a libido-driven act of domination by one person over another. No female is immune from the potential risk of a rapist's attack.[25]

¶ 12 Although the court relies on the attacker's knowledge of the claimant's schedule and of her employment tasks to prove that the rape *arose out of employment, the record fails to show that these conditions did in fact increase the danger of rape risk.* Any outsider who might have stalked the victim would have been able to observe these factors. That *alone* will not make the attack job connected. The law demands that some nexus between the attack and an employment-related risk be shown to establish a rape's compensable character.

¶ 13 For the purpose of risk analysis, rape may be described under the more general heading of "assault". *Larson's* text suggests that "[a]ssaults arise out of the employment either *if the risk of assault is increased because of the nature or setting of the work,* or *if the reason for the assault was a quarrel having its origin in the work.*"[26] "Assaults [committed] for private reasons do not arise out of . . . employment unless, by facilitating

an assault which would not otherwise be made, the employment becomes a contributing factor."[27] Claimant failed to demonstrate in this case that *either the nature or the setting of the work duties served to increase the risk of assault.* Neither has she shown that the motivation for the rape stemmed from the work environment.

### A.

### CLAIMANT UTTERLY FAILED TO DEMONSTRATE THAT THE RISK OF RAPE WAS IN FACT INCREASED BY THE NATURE OR SETTING OF HER EMPLOYMENT

¶ 14 Numerous jurisdictions have resolved a rape's compensable character by analyzing the nature or setting of the work as a source of an increased sexual assault risk. In cases where the work requirements contribute to the risk of assault, courts have ruled in favor of compensation.

¶ 15 In *Rathbun v. Starr Commonwealth for Boys,*[28] the court found that the rape of a female employee by a resident of a treatment facility where she worked did arise out of her employment. The decision rests on the finding that the precarious conditions associated with the presence of a female employee in a boys' treatment facility would forseeably increase the risk of assault.

¶ 16 In *Doe v. South Carolina State Hosp.,*[29] a nurse was raped by a mental patient. The court found that the working environment contributed to the attack. The decision applied *Larson's* approach that "the assault ar[ose] out of the employment [since] the risk of the assault [was] increased because of the nature [and] setting of the [nurses duties]."[30] In *Doe,* the nurse's employ-

**22.** 1 Larson's Workmen's Compensation Law § 7.30 at 3–13 to 3–14 (1996).

**23.** *Darco, supra* note 3 at 594; *Hensel, supra* note 3 at 203.

**24.** 1 Larson's Workmen's Compensation Law § 11.11(b) at 3–224 to 3–225 (1996).

**25.** It is recognized that rape perpetrated against a male would be subject to the same analysis. The crime is predominantly committed against females. For the purpose of this discussion references will be to the female gender.

**26.** 1 Larson's Workmen's Compensation Law § 11.00 at 3–200 (1996) (emphasis added).

**27.** *Id.*

**28.** 145 Mich.App. 303, 377 N.W.2d 872 (1985).

**29.** 285 S.C. 183, 328 S.E.2d 652 (Ct.App.1985).

**30.** *Id.,* 328 S.E.2d at 655.

ment required her to work in an area the employer foreseeably knew would pose a threat of rape or assault, increasing the worker's personal risks. The employment's enhancement of worker's personal risk justified the compensation awarded.

¶ 17 Courts also have found the presence of an enhanced risk of sexual assault in working conditions (a) that affected a hospital security attendant who was raped by a patient,[31] (b) where a cocktail waitress was sexually assaulted by a customer,[32] and (c) where a night auditor at a hotel was raped by an unknown assailant.[33] These cases share a common denominator—the *nature or setting of the work milieu* placed the female in a position of exposure to increased risk through contact with persons who, because of the *unique characteristic of the employment's environment,* forseeably might be aroused or tempted to commit sexual assault. *Larson's* text recognizes two categories of danger which induce work-enhanced risks by the nature or setting of the employment.

¶ 18 *First,* increased risk from employment in *dangerous duties*—where harm is deemed compensable if the risk is enhanced by (a) the *particular character* of the work or (b) the *particular environment* where the work must be performed.[34] *Employment duties* which by their very character increase the risk of assault include law enforcement officers, private security guards, employees in charge of cash or valuables, night club employees and public carriers such as taxi drivers.[35] This list, though not all-inclusive, represents the range and variety of positions which stand subject to increased risk of sexual assault by the very nature of the employment *duties.*

¶ 19 *Second,* enhanced risks by employment in a *dangerous environment*—where the time or place of the required work duties increases the potential for assault.[36] Employment requiring work at night or in isolated places near or in dangerous localities may be viewed as having increased the potential for assault. In *N.G. v. State,*[37] a child abuse investigator, when raped, was on a late night call. The court found that nocturnal employment afforded the opportunity for the late-night assault. Many an occupation—such as that of a sole night auditor in a hotel—may expose the worker to elements of *both dangerous duties and hazardous environments,* neither of which need be shown to have been exclusive of the other.

¶ 20 The court concludes today that (a) claimant was subjected to a danger of sexual assault greater than that present in the general public and (b) in perpetrating the rape the attacker used and was aided by his knowledge of the claimant's work schedule. It is not clear from the court's opinion how these factors enhanced the risk of rape. Nothing in the record suggests that the worker's employment shift created an increased risk, nor is there any evidence to show that on-the-job factors imposed a duty which enhanced the danger of rape. At least one of these factors *must* be present. Mere knowledge of a worker's schedule has *never* been held to be, by itself, supportive of an enhanced risk's presence.

¶ 21 The mere fact that an employee performs a task alone cannot serve as a predicate for finding that her injury by rape arose out of employment. That view would create an arbitrary and artificial nexus which would limit safe deployment of female personnel and hinder their task-related distribution at the job site. If the law were to do so, professional and management positions with private offices could be declared a job hazard for women. Something more must occur to

**31.** *Holland v. Norristown State Hosp.,* 136 Pa. Cmwlth. 655, 584 A.2d 1056 (1990).

**32.** *Culpepper v. Fairfield Sapphire Valley,* 93 N.C.App. 242, 377 S.E.2d 777 (1989).

**33.** *Hershey v. Ninety–Five Associates,* 413 Pa.Super. 158, 604 A.2d 1068 (1992).

**34.** 1 Larson's Workmen's Compensation Law § 11.11(a) at 3–200 (1996).

**35.** *Id.* at 3–201 to 3–215.

**36.** 1 Larson's Workmen's . Compensation Law § 11.11(b) at 3–216 (1996).

**37.** 300 N.J.Super. 594, 693 A.2d 543 (App.Div. 1997).

link a sexual assault to the risks of employment. *Claimant offers nothing but her lone inventory duty and the attacker's knowledge of her schedule.*

¶ 22 Assuming *arguendo* that when the store closed the employer did require the claimant to work for long periods of time in an isolated area located away from any other persons, such a finding would still be insufficient to support compensation for rape. The court must *first* determine that her injury arose either from a purely personal motive or is otherwise causally connected with the conditions of her employment. This too must be shown by affirmative proof adduced by the claimant.

## B.

## WORK–RELATED FACTORS VERSUS PURELY PERSONAL MOTIVATIONS FOR SEXUAL ASSAULT

¶ 23 *Larson* defines a compensable risk to include a work-related dispute leading to an assault, as distinguished from a dispute of a purely personal nature between the attacker and the victim. This approach is codified in 85 O.S.Supp.1997 § 3(10)(a), which defines an accidental injury as one "having as [its] source a risk *not purely personal* but one that is causally connected with the conditions of employment...."

¶ 24 Similar personal-risk analysis has formed the basis of court opinions from several jurisdictions. In *Hershey v. Ninety– Five Associates,*[38] the Pennsylvania court held that an employee who sought to forego compensation liability by opting to press a tort action for sexual assault must prove that her injury was *not* connected to the employee status and that her attacker *did harbor personal animosity.* While *Hershey* represents the converse scenario to that in the case at bar, the pronouncement correctly analyzes the *contrast* between *employment risks* and those which have a *source in personal motives.*

¶ 25 *Hershey* follows another Pennsylvania decision—*Brooks v. Marriott Corp.*[39]

There a waitress was attacked and killed while on the job. The girl's parents sought damages from the employer. They argued that exclusivity of the compensation remedy did not bar a tort claim because the harmful act was *aimed at* the decedent waitress herself—rather than at her *qua* employee. The critical issue for the court to decide was whether the attacker was unknown to the victim. The court found she was killed as an employee, not as a victim of the killer's personal animosity or passion.

¶ 26 The important relevance of these Pennsylvania cases is that they rest on the provisions of Title 77, § 411(1) Pennsylvania Statutes, which exempt from the state's compensation liability any harm "intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment." As in Oklahoma, Pennsylvania law excludes from the act any harm inflicted out of the attacker's purely *personal* motives. The critical difference between Oklahoma and Pennsylvania is that *in this state the burden of proving all elements of the claim is cast on the claimant,* while Pennsylvania seemingly *presumes* an attack to be compensable unless shown to arise from personal motivations.

¶ 27 The record in this case shows no more than the assailant's personal libido-driven motivation. He had been making advances at the claimant for a period of more than one year before the rape. His sexual passion was directed at the claimant's body. Nothing about the circumstances of claimant's sexual assault appears to have been employment related—at most, her job provided a place for the encounter.

¶ 28 Several jurisdictions have analyzed the interplay of risks in rape cases pressed as compensation claims. In *Western Airlines v. Workers' Comp. Appeals Bd.,*[40] a female employee was raped during a "layover" between flights. The court found that the attack occurred during the course of employment, but did not *arise out of her*

---

**38.** 413 Pa.Super. 158, 604 A.2d 1068 (1992).

**39.** 361 Pa.Super. 350, 522 A.2d 618 (1987).

**40.** 155 Cal.App.3d 366, 202 Cal.Rptr. 74 (1984).

*employment.*[41] It ruled that whether harm from an assault by another arises out of employment *depends upon whether the assault is made by reasons or circumstances connected with the employment.*[42] The facts failed to show a connection between the victim's employment and her becoming a target for the perpetrated sexual assault.[43] The court ruled that her rape arose out of a *personal risk,* which occurred at work. When unrelated to employment, rape is not compensable.[44] The nature of the victim's employment duties played no part in the attacker's formulation of intent to rape her; it merely provided a "stage for the event." [45]

¶ 29  In *City of Richmond v. Braxton,*[46] a supervisor sexually assaulted a female subordinate. The court analyzed the risk factors and determined that no causal nexus existed between the claimant's injury and the conditions under which the employer required her work to be performed.[47] The "arising out of employment" requirement *excludes* injuries which *cannot be traced to an increased risk having its origin in employment.*[48] A sexual attack claim *could* succeed only if a necessary causal connection was shown by establishing that the attack was directed at the claimant *as an employee or because of her employment.*[49] An attack is *not* compensable if found (a) to be of a personal nature and not directed against the employee as part of the employment relationship and (b) not to occur in connection with the employer's business.[50]

¶ 30  In *Massie v. Godfather's Pizza, Inc.,*[51] the U.S. Court of Appeals for the Tenth Circuit declared rape (in the suit there) to be a *personal risk inherent in the female gender of the victim,* not in the nature of her duties or of the work environment. In its analysis the court clearly explained the *requisite nexus:*

> " . . . it is clear that the rape was n[ot] distinctly associated with [the victim's] employment. . . . It was a non-employment motivated act of wanton brutality directed at the [victim] because she was a women [*sic*]. There is nothing to indicate that any other woman—whether or not a[n] . . . employee—who happened to be in the same area at the time of the attack would not have been the victim . . . . It is clear that she was not raped because of the nature of her duties or the nature of her workplace environment, nor because of any incident or quarrel growing out of the work." [52]

¶ 31  Claimant has failed to prove the essential nexus between the attack and her employment. That probative burden was hers to bear alone. Absent the required link, the assault must be considered to have arisen out of the attacker's *purely personal motives* wholly unrelated to events arising out of her employment.

## IV

## SUMMARY

¶ 32  Claimant's rape as a compensable accidental injury was not an issue tendered for review by *certiorari.* The Court of Civil Appeals pronounced the rape to have arisen

41.  *Id.,* 202 Cal.Rptr. at 75, (emphasis added).

42.  *Id.* (emphasis added).

43.  *Id.*

44.  *Id.* at 76, (emphasis added).

45.  *Id.*

46.  230 Va. 161, 335 S.E.2d 259 (1985).

47.  *Id.,* 335 S.E.2d at 262.

48.  *Id.* at 261. "[I]t excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the [worker] would have been equally exposed apart from the employ-

ment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

49.  *Id.*

50.  *Id.*

51.  844 F.2d 1414, 1421 (10th Cir.1988).

52.  *Id.*

out of her employment, and the employer did not challenge that determination by a petition for certiorari. Claimant's right to the award affirmed below is hence governed by the settled law of the case. The court errs today because (1) it *magnifies the Court of Civil Appeals' error by giving her, on this record, more than the compensation awarded by that court* and (2) it confers on her the benefit of a *mental-trauma award that was not sanctioned by the law in force when the rape took place.*[53]

¶ 33 If the court were free to revisit on certiorari the issue of whether claimant's rape is compensable, her claim would have to be declared without support in competent evidence. Statutory law places on a claimant the burden of production and persuasion. She must prove the existence of an employment-related risk that is the causal factor of her injury. Claimant was sexually attacked for purely personal motivations of her assailant. No element of her employment increased the *purely personal risk* of exposure to rape.

¶ 34 I am compelled to dissent from the court's opinion and from today's disposition of the claim. *While I must leave the Court of Civil Appeals' decision undisturbed, I would not increase the quantum of claimant's compensation above that awarded her on appeal. In the alternative, I would withdraw certiorari as improvidently granted. By so doing I would achieve the very same result.*

---

53. For an explanation of the law applicable to compensation for mental trauma, see *Fenwick v.* *Oklahoma State Penitentiary,* 1990 OK 47, 792 P.2d 60, 63.