2013 OK 79

**VALUED SERVICES, L.L.C. and American International South, Petitioners,**

v.

**Leslie TREGENZA and the Workers' Compensation Court, Respondents.**

No. 110,750.

Supreme Court of Oklahoma.

Oct. 1, 2013.

Kevin D. Berry, Reagan L. Madison, Tulsa, Oklahoma, for Petitioners.

Joey Chiaf, John C. McMurry, Oklahoma City, Oklahoma, for Respondents.

## OPINION

WATT, J.:

### FACTUAL BACKGROUND

¶ 1 The business premises of First American Cash Advance, owned by Petitioner/Employer Valued Services, L.L.C., a check cashing business, was robbed twice. The first robbery occurred on December 31, 2008, and the second was on April 7, 2009. Respondent/Claimant Leslie Tregenza was the branch manager and the only employee on the premises during both robberies. The first was an armed robbery by a man wearing something covering his face and a ball cap. In the second robbery on April 7, 2009,

during which she was ordered to turn off the security alarm, two men stole all of the cash the employer had on hand in the office. These men did not have guns. However, one of the robbers threw an empty plastic cash drawer at her head. She did not return to work for Employer after the second robbery.

## PROCEDURAL BACKGROUND

¶ 2 Claimant filed her Form 3 on October 19, 2009, alleging an accidental injury arising out of and in the course of her employment. She alleged she sustained an injury to her head with psychological overlay in the form of post-traumatic stress disorder (PTSD) and PTSD headaches. She sought permanent total disability (PTD) as a result of her injuries, claiming she is unable to work or to be out in public.

¶ 3 The trial court heard testimony, admitted evidence from both parties, and ruled as follows:

THAT the Court finds that the claimant is permanently totally disabled due to injury to her HEAD and PSYCHOLOGICAL OVERLAY. The claimant was struck in the head with a cash drawer and developed post traumatic headaches. Moreover, claimant has severe post traumatic stress disorder and depression. As a result of claimant's HEAD injury combined with PSYCHOLOGICAL OVERLAY the Court agrees with Dr. Munneke "that this individual is PERMANENTLY TOTALLY DISABLED and will be unable to return to the work force in any form or capacity whatsoever. Vocational rehabilitation and retraining, in my opinion, with this individual is not an option".

¶ 4 Additionally, the court awarded claimant continuing medical maintenance in the nature of four annual office visits and prescription medication under the care of Dr. Janita Ardis, a psychiatrist.

¶ 5 Employer made only a probative value objection to Dr. Munneke's report. It timely sought review of the trial court's order before a three judge panel of the Workers' Compensation Court En Banc. One of the issues Employer raised as error was that the finding of compensable injuries to "Claimant's head and psychological overlay was contrary to law and against the clear weight of the evidence and should be reversed." Further, Employer alleged:

The Trial Court' determination that Claimant sustained a head injury was not supported by her testimony or treatment records and Claimant's medical failed to recognize long standing migraines and such finding should be reversed.

¶ 6 On May 16, 2012, the three judge panel unanimously affirmed the trial court's order, finding it was "not against the clear weight of the evidence nor contrary to law. . . ." Employer appealed and the case was assigned to Div. I of the Oklahoma Court of Civil Appeals (COCA). On November 19, 2012, COCA held that the PTD award was against the clear weight of the evidence and reversed the trial court's order.

¶ 7 COCA granted Claimant's petition for rehearing and issued a substitute opinion on December 20, 2012.[1] We previously granted the petitions for certiorari filed by both Claimant and Employer.

¶ 8 In its opinion currently under review, COCA held, at ¶¶ 26, 27:

[A] claim submitted by an employee for compensation for permanent disability was required to be 'supported by competent medical testimony . . . which shall include an evaluation by the treating physician or an independent medical examiner if there is no evaluation by the treating physician.' 85 O.S. Supp.2005 § 17(A)(1).

Claimant's claim for permanent total disability was not supported by a medical report from either a treating physician or an independent medical examiner. The order of the Workers' Compensation Court finding Claimant was permanently totally

1. COCA reconsidered the evidence on rehearing under the "any competent evidence" standard of review announced in *Parks v. Norman Municipal Hospital,* 1984 OK 53, 684 P.2d 548, because Claimant's injury occurred on April 7, 2009, prior to the legislative revision of the workers' com-

pensation statutes effective August 26, 2011. See *Williams Companies, Inc. v. Dunkelgod,* 2012 OK 96, 295 P.3d 1107, in which this Court held that the appropriate standard of review on appeal in workers' compensation cases is that which was in effect at the time of the claimant's injury.

disabled was not supported by competent evidence and must be vacated. [footnote omitted]

■ ¶ 9 In a footnote following ¶ 27, COCA explained that the 2005 amendment of 85 O.S. § 17(A)(1), in effect at the time of Claimant's injury, removed the language previously found in 85 O.S. Supp.2002 17(A)(1) "a physician, including, but not limited to," in reference to an IME or a treating physician. COCA indicates that although the prior statute's language was broad enough to include a medical expert's testimony, the 2005 statute required the report of the treating physician **or** the IME **to support** the award given. In essence, COCA holds the amendment eliminated the medical expert as a witness who could give "competent medical testimony" on which to base an award. Since the appellate court found the treating physician did not give an opinion that Claimant was PTD, it held the trial court's award could not be sustained.[2] We do not believe, however, that § 17(A)(1) was intended to limit the testimony to only the treating physician or an IME. The statute requires only that the award be supported by "competent medical testimony which shall be supported by objective medical findings" and which shall "include" an evaluation by the treating physician or an IME if there is no evaluation by the treating physician. COCA's requirement that the PTD award must be "supported" by either the treating physician or a court-appointed IME improperly restricts the trial court from considering any evidence which is "competent medical testimony".

¶ 10 We discussed this issue in *Conaghan v. Riverfield Country Day School*, 2007 OK 60, 163 P.3d 557. We stated at paragraph 14:

We now turn to the text of 85 O.S. Supp.2005, § 17(A). A summary of a facial reading of subsection 17(A) follows. Sub-

paragraph (A)(1) places the responsibility for deciding disability with the workers' compensation court, it mandates that the court shall have medical evidence from the treating physician or an independent medical examiner for each claim, and it permits the court to have medical evaluations and opinions addressing compensability and permanent impairment **from other physicians.** It assigns the same meaning to the term 'physician' as set out in Section 14 but adds that 'physician' shall include a person licensed by another state who would be qualified to be a licensed physician under the laws of this state. Section 14 defines 'physician' to mean 'any person licensed in this state as a medical doctor, chiropractor, podiatrist, dentist, osteopathic physician or optometrist.' 85 O.S. Supp. 2005, § 14(E). [emphasis added]

¶ 11 Although there is no issue of a rebuttable presumption[3] in the present case, COCA's holding comes very close to requiring the trial court to award compensation "within the range" of opinions of the treating physician and an IME. This was formerly required in 85 O.S. Supp.2005, § 17(A)(2)(b), which we held to be unconstitutional because it restricted the workers' compensation court's determination of impairment and disability. See *Conaghan*, 2007 OK 60, ¶ 19, 163 P.3d at 564. We held this invaded the court's independence and discretion to accord the appropriate weight or probative value to the "objective medical evidence" as the trier of fact. The trial court must be free to find the facts and apply the law to the facts. COCA's holding also improperly restricted the trial court's consideration of competent evidence to that of the treating physician, Dr. Johnsen, who found Claimant was not PTD.

## EVIDENCE

¶ 12 Claimant testified that during the first robbery, the man made her go into a back

---

2. There was no IME appointed in this case. Although Claimant contends Dr. Munneke, her expert medical witness, is a "certified IME" in the Workers' Compensation Court, there is no order in this case appointing him specifically in that capacity.

3. In *Conaghan*, 163 P.3d at 563, the workers' compensation court required the court-appointed

IME to rebut the presumption in favor of the treating physician. We held the court misconstrued § 17(A)(2)(a) in so holding. We stated:

Instead, the language in § 17(A)(2)(a)—'determination of the existence or extent of physical impairment shall be supported by objective medical evidence, as defined in Section 3'— indicates the contrary.

room and sit down when he pulled a gun out of his back pocket. She testified she thought she "was dead." After he left, she discovered the panic button was not working and called the police. As to the second robbery, she testified the empty plastic cash drawer thrown at her hit her in the head, knocked her into the filing cabinets and caused her to fall backward over a fan, onto the floor. When they left, she locked the door and called 911. She testified she has a problem with headaches which she associates with the head injury and "triggers" her to recall the robberies, which lead to severe headaches. She also said she now has memory problems which she did not have before the robberies.

¶ 13 She said she rarely leaves her home unless someone goes with her. She sleeps with a firearm. She obtained a "conceal and carry" permit after the second robbery. She stays awake while her husband sleeps and sleeps when he is awake. She has received, and at the time of trial was still receiving, psychiatric treatment for her PTSD. She has developed several phobias.[4]

¶ 14 On cross examination, Claimant said she had only previously taken antidepressants after the birth of her baby. She had postpartum depression and was going through a divorce at the time. She stated she had migraines before the robberies "in my pregnancies." She also stated she was in a car accident between the time of the two robberies. She stated she got a neck and back injury which caused knots in the back of her neck and tension headaches. Although surgery was recommended, she declined to do it. Claimant also testified she had gone out of town by herself for particular events. She explained that in April, 2010, she went to Kansas because her father had a heart attack. It is a two and a half hour drive. In May, 2010, she went to visit her parents in Kansas "for a birthday present." In June, 2010, she traveled to her daughter's graduation, but she did not go alone. She only does yard work if her husband is home. If he is away, a neighbor across the street watches her through the window. As to the job she held, working in a church flower shop in Yukon, she said she quit because the owner of the shop, a friend from her Bible study, wanted her to branch out to make deliveries beyond Yukon. She admitted when making deliveries, she took her husband or a family member along with her in the delivery vehicle. She did not want to tell the owner of this, as "it was weighing heavy on my heart that I hadn't told her that I was taking family members or my husband with me." She quit and never told her boss of her delivery practices.

¶ 15 The written medical opinion of Dr. Munneke, Claimant's expert witness, was attached to his deposition, Claimant's Exhibit 1. Dr. Munneke diagnosed Claimant with post-traumatic headaches, depression and post-traumatic stress disorder. He gave his opinion that Claimant was permanently totally disabled. He stated he did not believe Claimant would be able to return to work because of her PTSD. He based this opinion[5] on his examination of Claimant; the medical opinions of other doctors, including Dr. Janita Ardis, [a psychiatrist who was treating Claimant at the time who opined she could not work]; and his review of a packet of reports and evaluations from the office of Dr. David Johnsen and the psychological team who treated Claimant for approximately two years. Additionally, Dr. Munneke considered the report of Claimant's witness Lon Huff, a vocational rehabilitation counselor who evaluated her, and the evaluation of

---

4. Because the robberies were committed by African–American males, Claimant now has a fear of all African–American males. She panics if she is in the same room with one. None of the men who robbed Employer have been caught, and she stated she is afraid of being confronted by them in the future.

5. Dr. Munneke testified that after reviewing the medical records and performing a physical on her that she fell "under a Class IV on Table 14–4 on page 363 on the Fifth Edition of the Guides and had 75 percent impairment due to

her posttraumatic stress disorder and subsequent depression ... [a]nd she also had 10 percent impairment to the body as a whole due to her posttraumatic headaches, secondary to her incident that occurred when she was struck in the head on the 7th of April of 2009." He also testified he "felt that she was permanently totally disabled due to both medical and psychiatric conditions and would be unable to return to the work force." Deposition of John Munneke, M.D., December 20, 2011, page 8.

Employer's witness representing C.A.R.E., which was still being finalized at the time. Lon Huff's report found her to have transferable skills, but because of her PTSD and the medications she was taking, he believed retraining would not be an option for Claimant. However, Dr. Munneke stated he believed the medications she was taking were reasonable and necessary and in accordance with the diagnoses she has been given. She has also developed several phobias which leads Dr. Munneke to think she will not be able to return to the work force. She rarely leaves her home, although she may leave to go to the doctor. She may go to the grocery store with her husband, but remains in the car with the doors locked. He said she stated she feels like a prisoner.

¶ 16 Dr. Munneke testified he had reviewed the reports from Dr. Johnsen's office. He argued the report finding Claimant was not PTD and that she had reached maximum medical improvement (MMI) as of September 14, 2010, was not from Dr. Johnsen, but from a licensed clinical social worker from his office. Dr. Munneke agreed, however, that Dr. Johnsen's name was on the report, also.[6]

¶ 17 Dr. Munneke testified that her medical records show her physical limitations in returning to work relate to the fact that she doesn't like to leave the house. She's afraid of people in general. Her friends and family have to come to the house. She doesn't go to the park. She won't open the door, walk her dogs or go shopping. She goes with her husband to the grocery store but stays in the car with the doors locked. She's afraid to get the mail. She has constant fear and has nightmares. She developed Shingles because of the stress. She does not watch the news on television and will only watch certain shows. She gets frequent headaches requiring her to take medication and get in a dark room. Dr. Munneke's opinion that Claimant is PTD was not changed because of Dr. Johnsen's report finding MMI had been reached or that Claimant can work with the restriction of limited exposure to the general public. He stated his opinion was offered within a "reasonable degree of medical certainty."

¶ 18 Employer contends Claimant did not prove she had a physical injury because she was not treated for her head injury. On that issue, COCA held:

Based on this record, the trial court and the three-judge panel found Claimant sustained accidental personal injury to the head. The Court's finding as to causation need not be supported by medical evidence. *Brown v. Mom's Kitchen, LLC,* 2004 OK CIV APP 66, 96 P.3d 808, 810. It may rely on direct or circumstantial lay evidence. *Adair Public Schools v. Haley,* 2005 OK CIV APP 83, 122 P.3d 490, 492. Claimant's testimony supports the trial court's finding and therefore the order rests upon competent evidence.

¶ 19 Employer responds that COCA erred in holding the significant issue involved was causation. Rather, Employer contends the court was called upon to decide if Claimant suffered a physical head injury at all in order to make her mental claim compensable. While Employer denies that causation is an issue with regard to Claimant's head injury, for which lay testimony will suffice, we disagree. Employer raised the issue that Claimant's headaches did not arise because of her head injury during the April 7, 2009 robbery, but because of Claimant's car accident occurring between the time of the two robberies.

¶ 20 Mr. Huff, the vocational rehabilitation evaluator, stated Claimant has the mental ability and the transferable skills that could be used to succeed in vocational training at the vocational-technical level and possibly the community college level. However, he did not believe Claimant was a candidate for vocational rehabilitation or for work in any full-time setting. He described the specific problems he believed caused him to change his mind as to her ability to be a candidate for vocational rehabilitation:

I believe, first of all, her fear, her stated fear, which is consistent with the informa-

---

6. In the report of May 6, 2010, from Dr. Johnsen, the psychologist, he opined Claimant should reach MMI in about 12 to 16 weeks, which would place the date for MMI at approximately September 9, 2010, using the longer period in his estimate.

tion provided. Constant fear makes one's performance on a job difficult. I mean, if one's in constant fear they don't perform as well.

Secondly, the nightmares and anxiety, that would be an indicator that she's not alert at all times. Her memory difficulties and the fact that she no longer drives, or she drives very little, and fear of the public are all factors that tell me she couldn't work.

As I indicated earlier, even if we were to consider employment in the home, at some point she's going to have to communicate with the public on a regular basis just to get the work. And I don't believe she could do that.

¶ 21 Mr. Huff was asked why Claimant had a fear of going into the public. He answered:

She cannot deal with the unexpected, cannot deal with new things or things that are not planned out or structured.

Even the one comment about her possibly working by a physician, he indicated she would have to be working with somebody in order to become accustomed to the situation. I don't agree that she could do that.

But even that is an indicator that she cannot function in a situation where things are not planned out and she does not know who is going to be there.

¶ 22 He said she even asked someone in his office how many people would be present in his office before she saw him. He reiterated that even if she were to work from home, it would eventually become necessary to communicate with people outside. He further said:

The point is, I don't see how she can do any work in her home with concentration difficulties and the need to even focus just briefly with the public.

With her memory difficulties too, I wouldn't want to trust her with any of my books.

¶ 23 He stated that over thirty years as a vocational rehabilitation counselor he has worked with people with post-traumatic stress and that her complaints were not inconsistent with that.

## AUTHORITY

¶ 24 Lay testimony is admissible to prove causation in workers' compensation claims. See *Miles v. Frontier Plastic Fabricators*, 1999 OK 18, 976 P.2d 1051, citing *Collins v. Halliburton Services*, 1990 OK 118, ¶ 8, 804 P.2d 440. The trial court was free to apply whatever weight and credibility it believed was appropriate to Claimant's testimony. Claimant testified she was hit in the head at the time of the robbery on April 7, 2009, and associated that assault with the severe headaches which began thereafter. She testified the car accident, between the time of the two robberies, caused tension and knots in the back of her neck. She described the severe headaches after the robbery as requiring medication and going into a dark room. Although she stated she had had migraines previously, they were not close in time to the robbery or the car accident, having occurred during her pregnancies.

¶ 25 In *Wal–Mart Stores, Inc. v. Reinholtz*, 1998 OK 11, 955 P.2d 223, this Court considered the necessary element of a physical injury, pursuant to 85 O.S. Supp.1992 § 3(7)(c),[7] in the pursuit of a claim based on psychological overlay. The claimant therein was raped by a supervisor of Employer. Claimant sought benefits for her psychological injury, as well as a back injury and a skin rash. The back injury was found to be compensable and she was awarded benefits for her psychological overlay claim. This Court made clear that Claimant no longer received treatment for her back injury,[8] but that it sufficed to sustain continuous treatment for her psychological overlay claim.[9] The statute in *Reinholtz* was similar to the pertinent statute in this case. The definition of "injury" or "personal injury" required mental injuries only to be "accompanied" by physical injury, not to be caused by it.

7. *Reinholtz*, 955 P.2d at 225, n. 1.

8. See *Reinholtz*, 955 P.2d at 224, ¶ 3.

9. See *Reinholtz*, 955 P.2d at 224, ¶¶ 19–20.

¶ 26 In the same way in the case before us, the head injury accompanied the psychological claims. However, Claimant was not required to prove it caused them. We find that Employer's evidence acknowledged Claimant experienced headaches as a result of the robbery. Although he noted that Claimant was not treated for a physical injury, Dr. William Jones, Employer's expert witness, stated in his written report of June 21, 2011:

*Pain Diagram and Current Complaints of allegedly injured body parts:* According to the patient, her head hurt for a few weeks but nothing now. . . .

¶ 27 The report is dated more than two years after the second robbery. The decreased pain he noted at that time was consistent with Claimant's testimony and the report of Dr. Munneke. Dr. Jones' recognition of head pain for a few weeks after the robbery is inconsistent with finding no head injury occurred. Dr. Jones stated Claimant was not treated for a physical injury in connection with the robberies, but he acknowledged the head injury occurred, and Claimant testified it led to severe headaches. Therefore, we agree with COCA's ruling that this was competent evidence of a physical injury which accompanied her mental injury of depression, PTSD and post-traumatic headaches.

¶ 28 "Permanent total disability" was defined by 85 O.S. Supp.2005, § 3(20) as follows:

"Permanent total disability" means incapacity because of accidental injury or occupational disease to earn any wages in any employment for which the employee may become physically suited and reasonably fitted by education, training or experience, including vocational rehabilitation; loss of both hands, or both feet, or both legs, or both eyes, or any two thereof, shall constitute permanent total disability;

¶ 29 The Workers' Compensation Court received competent evidence that Claimant is permanently totally disabled under the definition above. Although she is still receiving ongoing psychiatric care, credible competent evidence received that she is not a candidate for vocational rehabilitation or future employment. While Claimant's evidence was disputed, this Court may not weigh the evidence received. See *Williams Companies, Inc. v. Dunkelgod, supra,* n. 1; *Parks v. Norman Municipal Hospital, supra,* n. 1.

¶ 30 The opinion of the Court of Civil Appeals is vacated, and the order of the three judge panel is affirmed.

¶ 31 **OPINION OF THE COURT OF CIVIL APPEALS IS VACATED; ORDER OF THE THREE JUDGE PANEL OF THE WORKERS' COMPENSATION COURT IS AFFIRMED.**

ALL JUSTICES CONCUR.