[No. A024353. First Dist., Div. Five. May 4, 1984.]

WESTERN AIRLINES, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD et al., Respondents.

COUNSEL

Jerry R. Wells and Mullen & Filippi for Petitioner.

Salvatore R. Spano and Robert M. Lofgren for Respondents.

OPINION

KING, J.—In this case the Workers' Compensation Appeals Board (Board) decided that an airline flight attendant (claimant), who was raped during a 26-hour "layover" between flights, suffered injury arising out of and in the course of her employment. (Cf. Lab. Code, § 3600.) The Board made its finding upon reconsideration of an opinion of a workers' compensation judge to the contrary. We conclude that the judge's analysis of the case was correct, and we annul the Board's decision.

I

The few facts necessary to our decision are uncontroverted. The flight attendant (claimant) arrived in Honolulu at about noon local time, aboard a flight from San Francisco. She had been engaged in her employment during that flight, and was scheduled likewise to "work" a return flight which departed at 2 p.m. the next day. Claimant was paid salary during the 26-hour layover. The employer paid for her hotel room. The only restriction employer imposed on claimant's activities during the layover was that she should not drink alcohol within 12 hours before the departure. Employer neither encouraged nor discouraged social or recreational activities or dating.

While sitting on the beach the afternoon of her arrival, claimant was approached by a man she had never met. They talked amiably for about an hour, whereupon the man suggested that they go for a bike ride. Claimant accepted. She changed clothes at her hotel room and met the man at his apartment building. He showed her some art objects in his apartment and suggested that she should change into some clothes, purportedly belonging to his sister, which were more suitable for bike riding. Claimant changed clothes in the bathroom, and the two proceeded on the bike ride. When they returned she accompanied the man to his apartment in order to change clothes. There he forcibly raped her. At no time prior to the assault did the man make sexual overtures or otherwise reveal his intentions. In the aftermath of the incident, claimant alleges, she suffered emotional or psychological disability.

## II

The judge reasoned that claimant was the victim of an "intentional assault that was motivated purely by the personal desires of an individual in no way connected with her employer of her employment." The Board disagreed with his interpretation of the facts. It concluded that the case involved a "non-personal motive," i.e., a " 'neutral' " risk, noting that the inquiry into whether the motivation was "personal" or not relates to the person of the victim, not the person of the assailant. This attack was not personal in that sense, according to the Board's view, because there was no evidence of a prior personal relationship between the parties or of a personal grievance between them.

## III

Labor Code section 3600 provides generally for workers' compensation liability where an employee suffers injury "arising out of and in the course of the employment . . . ." "Generally, 'in the course of employment' refers to the time and place of the injury. [Citation.] The phrase 'arise out of employment' refers to a causal connection between the employment and the injury. [Citation.]" (*State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd. (DeVargas)* (1982) 133 Cal.App.3d 643, 652 [184 Cal.Rptr. 111].) Generally, whether an assault at the hands of a third person will be considered one "arising out of . . . the employment" depends upon "whether the assault is made by reason of circumstances connected with the employment or without any relation thereto." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1983) § 10.03[3][a], pp. 10-15 to 10-16.)

Under these facts we must conclude claimant's injury was nonindustrial. The facts do not show that claimant's employment contributed in any way to her selection as the victim of this assault. We believe the authorities support Hanna's general description of the rule.

Liability depends upon the nature of the risk of such an injury. There are three kinds of risk—industrial, personal and neutral. Employees should recover in the "industrial risk" and "neutral risk" cases. (See *Clemmens* v. *Workmen's Comp. App. Bd.* (1968) 261 Cal.App.2d 1, 6 [68 Cal.Rptr. 804].)[1] This form of analysis is often applied in assault cases. (Cf. 2 Hanna, *supra*, § 10.03[3][d], pp. 10-18 to 10-18.1.)

---

[1]A neutral risk is one which is related to neither the employment nor the employee, or the nature of which is unknown. (*Clemmens* v. *Workmen's Comp. App. Bd., supra,* 261 Cal.App.2d at p. 6.)

■ The Board's application of this analysis was focused too narrowly upon the words "personal" and "neutral," and overlooked the true inquiry which those terms are designed to aid—the inquiry into whether or not the assault arose out of the employment. As Hanna notes, the "personal" inquiry turns on whether the risk was related solely to the employee's person and was without any connection to the employer's business. (2 Hanna, *supra*, §§ 10.03[3][a], 10.03[3][c] pp. 10-15 to 10-16, 10-18.) The "neutral" category is intended to encompass those risks which are neither personal in this sense nor related to the employment (cf. Lab. Code, § 3202), and accordingly, it includes "unknown" risks.

By these standards, the risk in this case was not industrial or neutral; it was a personal risk. ■ The Board found it "neutral" only because there was no history of relationship between claimant and the assailant, because evidently the assailant selected claimant at random.[2]

Our conclusion in this case is supported by recent decisions. In *Transactron, Inc.* v. *Workers' Comp. Appeals Bd.* (1977) 68 Cal.App.3d 233 [137 Cal.Rptr. 142], a man followed the employee into the workplace, learned from a coworker that she was in the bathroom, and proceeded to the bathroom and shot her. The court annulled an award of benefits. "[T]he nature of the decedent's duties played no part in the assailant's evident intent to assault her . . . . The nature of her duties was not the proximate cause of her injury for it merely provided a stage for the event. In other words, the employment was not a contributory cause of the injury." (*Id.*, at p. 238.)[3]

*California State Polytechnic University* v. *Workers' Comp. Appeals Bd.* (1982) 127 Cal.App.3d 514 [179 Cal.Rptr. 605], involved similar facts. A receptionist was shot to death at work. No one witnessed the crime, but there was strong circumstantial evidence implicating her boyfriend. The court's actual holding was confined to the issue of which party bears the burden of proof. It noted, however, with a reference to *Transactron,* that "if an assault at work is purely personal *and unrelated to the employment,* the injury is not compensable." (*Id.*, at p. 518, italics added.)

---

[2]The Board stated that the case turned on "whether the motive for the assault was personally related to the injured worker," and concluded that it was not. If this is viewed as a fact issue, it is plain that there was sufficient evidence to support a conclusion to the contrary. The judge reached that contrary conclusion. In this connection, we note that a judge's findings "are entitled to great weight." (*Zurich Ins. Co.* v. *Workmen's Comp. Appeals Bd.* (1973) 9 Cal.3d 848, 853 [109 Cal.Rptr. 211, 512 P.2d 843].)

[3]In *Transactron* the "personal" relationship between the parties was not really relevant. The relevant facts and the result would have been the same if the assailant had only seen the victim on the street that morning and developed an insane fixation upon her. This illustrates that "personal" means "relating in some fashion to the person of the victim and without connection to the employment;" it does not mean "arising out of a personal relationship between the assailant and the victim."

In *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.* (*De-Vargas*), *supra,* 133 Cal.App.3d 643, two employees were shot to death in an employer's bunkhouse. The evidence revealed that the assailants knew the victims slightly from prior dealings unrelated to the employment, and killed them in the commission of a robbery. The court annulled an award of benefits. The claimants made a contention similar to the one claimant makes here—that a rule which acts to expand the scope of "course of the employment" (in *DeVargas,* the "bunkhouse rule") leads automatically to compensability when its requirements are met. The court rejected that interpretation (*id.,* at p. 653), holding that there must further be proof of an injury "arising out of . . . the employment."

After a careful review of precedent the court stated: "Injuries to employees in bunkhouses are not per se compensable; if a third party assaults and injures the employee while in the course of employment (including being in a bunkhouse) and. the third party acted out of purely personal motives there is no compensability. However, if the employee can also show there was *some employment connection or contribution, i.e., an industrial cause of the injury so as to establish the arising-out-of element,* then there is compensability. Such cause need not be the sole cause and need only be a contributing cause. Finally, if the third party's assault causing the injury occurs in the course of employment and is committed for unknown motives or no motive at all, i.e., for nonpersonal motives, the injury is compensable." (*Id.,* at p. 655; second instance of italics added.) It is particularly instructive that one of the victims in *DeVargas* had not previously formed any "personal" relationship with the assailants. Even so, the court noted, a part of the assailants' motive was an intent to " 'blow away niggers and Mexicans' " (*id.,* at p. 656), and thus, "[e]ven though Vargas may have been a virtual stranger to the killers, it is difficult to see how the Board could possibly have concluded that there was no personal motivation . . . ." (*Id.*)

The facts of this case are parallel. At best for claimant, the Board could only find that the assailant's intent was to rape a woman. Absent evidence that he desired to rape a flight attendant, or to harm a Western Airlines employee, that motive was strictly "personal" for purposes of workers' compensation law.

The cases upon which the Board and claimant rely are uniformly "commercial traveler" cases. Whether the "commercial traveler" rule applies in this case to make the injury one suffered in the course of employment is not dispositive. The cases cited do not stand for the proposition that injuries suffered by commercial travelers are compensable without regard to whether or not they arose out of the employment. (Cf. *Leonard Van Stelle, Inc.* v.

*Industrial Acc. Com.* (1963) 59 Cal.2d 836 [31 Cal.Rptr. 467, 382 P.2d 587]; *Wiseman* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 570; [297 P.2d 649]; *IBM Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 77 Cal.App.3d 279 [142 Cal.Rptr. 543].)

## IV

The opinion and order dated August 11, 1983, is annulled. The Board is directed upon remand to reinstate the findings and order of the workers' compensation judge dated March 9, 1983.

Low, P. J., and Haning, J., concurred.

Claimant's petition for a hearing by the Supreme Court was denied June 27, 1984. Bird, C. J., was of the opinion that the petition should be granted.