Filed 11/28/23  Abraham v. Wells Fargo Bank CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DIANE ABRAHAM et al., | C098233 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 34-2020-00274724-CU-PO-GDS) |
| WELLS FARGO BANK, N.A., | |
| Defendant and Appellant. | |

Plaintiffs Diane and John Abraham sued Wells Fargo Bank, N.A. (Wells Fargo) and Sheonta Malbrough[1] for the wrongful death of their daughter Deniece Abraham (Abraham).  Abraham died while on a business trip for Wells Fargo when traveling to the hotel after a night out with her colleagues.  Wells Fargo moved for summary judgment, arguing the trial court lacked jurisdiction because plaintiffs' case was barred by the

---

[1]    Malbrough is not a party to this appeal.

1

workers' compensation exclusivity doctrine.  Plaintiffs argued Abraham's night out was a purely personal endeavor that removed their claim against Wells Fargo from the provisions of the Workers' Compensation Act (Lab. Code,[2] § 3600).  The trial court agreed with Wells Fargo and granted its summary judgment motion.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Abraham worked for Wells Fargo at its business support call center in Sacramento.  She was part of a team of traveling bankers that went to Virginia to train new call center employees who had been hired to staff a business support call center in that state.  As part of the traveling banker training, Wells Fargo promoted the traveling banker position as an opportunity to network with colleagues from other branches and pursue leadership roles.  The trip to Virginia was scheduled to occur between November 24, 2019, and November 27, 2019, with each day's training sessions lasting from 7:00 a.m. until 3:00 p.m.  After 3:00 p.m., the traveling bankers were considered to be on their own time and free to do whatever they wanted.

The trip was organized by a manager with Wells Fargo who arranged air travel, lodging, and rental car reservations.  All of the traveling bankers from Sacramento were permitted to drive the rental cars reserved for the trip.  Further, all the traveling bankers from Sacramento were included in a group text messaging conversation to communicate about the shared use of the rental cars so that everyone could efficiently travel to the training sessions, obtain dinner, or run errands.  For the trip, Wells Fargo issued each traveling banker a "purchasing card" to pay for travel expenses and meals.  The traveling bankers were prohibited from using the purchasing card to buy alcohol.

Wells Fargo's team member handbook required employees to follow all local, state, and federal driving requirements when operating a vehicle while performing

---

[2]     Undesignated section references are to the Labor Code.

2

company business.  The handbook prohibited Wells Fargo's employees from preforming job duties, including driving while on company business, if impaired by alcohol.  The handbook also required employees to use "a safe means of transportation" when consuming alcohol at work-related events.  The traveling bankers were not told of any restrictions concerning their consumption of alcohol.

The hotel where the traveling bankers stayed provided complimentary alcohol during a happy hour each night in its lobby.  On the first and second days of the trip, all of the traveling bankers ate dinner together at a restaurant near the hotel.  On the third day of the trip, November 26, 2019, the traveling bankers discussed plans for dinner that evening, including meeting with trainees and a supervisor from the Virginia office.  After training ended for the day, the traveling bankers drank alcohol in the lobby of their hotel.  Abraham and two of her colleagues went to dinner at a karaoke bar using one of the rental cars provided by Wells Fargo.  They arrived at the karaoke bar around 8:00 p.m.  There, they danced, drank alcohol, and ate chicken wings.  Employees from the Virginia Wells Fargo branch arrived at the karaoke bar at approximately 10:00 p.m. and the group continued to dance, drink alcohol, and eat chicken wings.

Shortly after 1:30 a.m., Abraham and her two colleagues left the karaoke bar and used the rental car provided by Wells Fargo to drive back to their hotel room.  Abraham was a passenger in the car.  At approximately 2:00 a.m., the driver of the rental car crashed into a tree while exiting the freeway.  Abraham died from her injuries.

Plaintiffs sued Wells Fargo for negligence pertaining to the wrongful death of their daughter.  Wells Fargo moved for summary judgment, asserting plaintiff's suit was barred by the exclusive remedy provisions of the Workers' Compensation Act.  Specifically, Wells Fargo argued that, because Abraham was considered a commercial traveler at the time of her death, her death was caused by a workplace injury that was exclusively compensable with workers' compensation benefits.  Plaintiffs opposed the motion, arguing that Wells Fargo failed to prove as a matter of undisputed fact that

3

Abraham was not engaged in a personal undertaking at the time of her death. The trial court agreed with Wells Fargo and granted the motion for summary judgment, ultimately leading to dismissal of the case.

Plaintiffs appeal.

DISCUSSION

Summary judgment should be granted when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843.)

A defendant moving for summary judgment bears the initial burden of proving that there is no merit to a cause of action by showing "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to th[at] cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); see *Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1037.) " 'A defendant moving for summary judgment based on an affirmative defense . . . bears an overall burden of persuasion that there is a complete defense to the plaintiff's action' . . . [and] must persuade the court there is no triable issue of fact as to that defense." (*Fazio v. Fairbanks Ranch Country Club* (2015) 233 Cal.App.4th 1053, 1057.) Once a defendant has made such a showing, " 'the burden shifts to the [plaintiff] . . . to show that a triable issue of one or more material facts exists as to that cause of action or' " as to a defense to the cause of action. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 849.) A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id*. at p. 850.)

4

We review the trial court's decision de novo (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65-66) and make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law" (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222). In doing so, we "[consider] all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We view the evidence and the inferences reasonably drawn from the evidence "in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 843.)

I

*Wells Fargo Met Its Burden Of Establishing Abraham Was*
*A Commercial Traveler At The Time Of Her Death*

Wells Fargo contends it met its burden of persuasion in showing that Abraham was a commercial traveler at the time of her death, and thus fell within the exclusive remedy provisions of the Workers' Compensation Act. We agree.

Subject to limited exceptions, workers' compensation is the exclusive remedy available to injured employees against an employer responsible for injuries "arising out of and in the course of the employment." (§ 3600, subd. (a); see §§ 3600-3602, 5300.) "[T]he exclusivity provisions encompass all injuries 'collateral to or derivative of' an injury compensable by the exclusive remedies of the [Workers' Compensation Act]." (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 813.) An injury is "compensable" for exclusivity purposes if the plaintiff is seeking to recover for an " 'industrial personal injury or death' " sustained in and arising " 'out of and in the course [and scope] of the employment' " (*id.* at pp. 813-814), and (2) the acts or motives

5

giving rise to the injury constitute " 'a risk reasonably encompassed within the compensation bargain' " (*id.* at pp. 819-820).

"[T]he legal theory supporting such exclusive remedy provisions is a presumed 'compensation bargain,' pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability." (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16.)  The exclusive remedy rule is an affirmative defense to an action at law.  (*Doney v. Tambouratgis* (1979) 23 Cal.3d 91, 96; *Reynaud v. Technicolor Creative Services USA, Inc*. (2020) 46 Cal.App.5th 1007, 1020.)

"[I]t is well-established that an employer's liability extends beyond the normal workplace." (*Fleetwood Enterprises, Inc. v. Workers' Comp. Appeals Bd.* (2005) 134 Cal.App.4th 1316, 1324.)  Under the " 'commercial traveler' " rule, an employee traveling on the employer's business is regarded as acting within the course of employment during the entire period of his, her, or their travel.  (*Wiseman v. Industrial Acc. Com.* (1956) 46 Cal.2d 570, 572.)  " 'His [or her] acts in traveling, procuring food and shelter are all incidents of the employment, and where injuries are sustained during the course of such activities, the Work[ers'] Compensation Act applies.' " (*Ibid.*) "Section 3202 requires that the provisions of the Work[ers'] Compensation Act be 'liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment.' " (*Dimmig v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 867.)

Here, Abraham was an employee of Wells Fargo traveling for the purpose of Wells Fargo's business.  During the business trip, Abraham went out for dinner and drinks with colleagues and then died on the way back to the hotel.  These undisputed facts establish that Abraham was a commercial traveler at the time of her death, and thus her conduct of traveling and procuring food fell within the conditions of her employment.

## II

### *Plaintiffs Have Not Established A Triable Issue Of Fact*

Plaintiffs contend a triable issue of fact exists as to whether Abraham's conduct on the night of her death transformed the evening into a personal endeavor, excluding plaintiffs' suit from the exclusive remedy provisions of the Workers' Compensation Act. We disagree.

"[T]he scope of the commercial traveler rule, though broad, is not unlimited; the activity at the time of injury or death must bear some relation to the purposes of the employment. (1 Herlick, Cal. Workers' Compensation Law[ (5th ed. 1994)] § 10.18, p. 10-33.) As [we] explained in *Dalgleish v. Holt* (1952) 108 Cal.App.2d 561, 566: '[T]his rule does not embrace all activities of a commercial traveler irrespective of their connection with the purposes of the employment. The conditions essential to compensation as set forth in section 3600 of the Labor Code apply equally to traveling employees; the status of an employee as a traveling salesman does not change a course of action [that] is not within the scope of the employment to one that is.' An injury is not compensable if the employee's activities 'amounted to a purely personal undertaking.' (*Ibid*.; see also *Western Airlines v. Workers' Comp. Appeals Bd.* (1984) 155 Cal.App.3d 366, 369 [rape of an airline flight attendant during 26-hour layover between flights was noncompensable]; 1 Hanna, Cal. Law of Employee Injuries & Workers' Compensation (rev. 2d ed. 1997) Injury and Employment, § 4.117[2], p. 4-133 ['All activities of a commercial traveler . . . are not within the course of employment. . . . The focus is on the nature of the activity rather than the status of the employee.'].)" (*LaTourette v. Workers' Comp. Appeals Bd.* (1998) 17 Cal.4th 644, 653.)

However, it has been held that " 'where the employee is combining his[, her, or their] own business with that of his[, her, or their] employer . . . , no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly [n]or indirectly could he have been serving his[, her,

or their] employer." (*Wiseman v. Industrial Acc. Com.*, *supra*, 46 Cal.2d at p. 573.) Indeed, even when employees are engaged in illegal conduct, their conduct falls under the Workers' Compensation Act so long as they are engaged generally in performing a task for their employer. (See *id.* at pp. 572-573.)

Plaintiffs have not shown Abraham was engaged in a purely personal undertaking at the time of her death. Abraham was traveling back to her hotel after dinner with her colleagues while on a business trip. This type of conduct places plaintiffs' claims within the Workers' Compensation Act. (*Wiseman v. Industrial Acc. Com.*, *supra*, 46 Cal.2d at p. 572.) The fact Abraham and her colleagues also consumed alcohol and stayed up late to dance is of no consequence. Among the purposes of the business trip was the opportunity to network with other Wells Fargo employees. The team of traveling bankers was encouraged to dine together and network with each other and employees from Wells Fargo's Virginia branch. While Wells Fargo did not pay for employees' alcohol, it did not prohibit its consumption. As a consequence, Abraham's conduct was within the scope of her business trip and not of a purely personal nature.

Plaintiffs disagree, relying on *Dalgleish v. Holt*, *supra*, 108 Cal.App.2d 561 and *Western Airlines v. Workers' Comp. Appeals Bd.*, *supra*, 155 Cal.App.3d 366 (*Western Airlines*). In *Dalgleish*, an employee of a neon sign company accompanied his employer on a business trip even though the employee did not plan to attend the business trip nor did the employee have business to conduct on the trip. (*Dalgleish*, at pp. 563-564.) While at the destination, the employee contacted some customers but did not otherwise engage in business. (*Id.* at p. 564.) The employee had an opportunity to leave the trip to go home but decided to stay overnight at his employer's urging. (*Ibid.*) The employee and employer had a social relationship outside of work. (*Ibid.*) On the evening of the business trip, the employee and employer went out for dinner, drinks, and gambling. (*Ibid.*) After drinking alcohol at multiple establishments, and while driving to procure food, the employer lost control of the car and crashed. (*Ibid.*) We held that a "trier of the

fact could have concluded that the [employee]'s activities during the evening of the accident amounted to a purely personal undertaking bearing absolutely no relation to the purposes of the employment." (*Id.* at p. 566.)

In *Western Airlines*, a flight attendant was on a 26-hour layover when she went on a bike ride with a man she met. (*Western Airlines*, *supra*, 155 Cal.App.3d at p. 368.) After the bike ride, the man raped her. (*Ibid.*) The appellate court held that the flight attendant was engaged in a purely personal endeavor when she was raped because the rape did not arise out of the flight attendant's employment. (*Id.* at p. 370.) Indeed, the man who raped the flight attendant did not target her because of her job but selected her at random. (*Ibid.*)

*Dalgleish* and *Western Airlines* are unhelpful to plaintiffs. They both stand for the proposition that an injury must arise out of the conditions of employment. (*Western Airlines*, *supra*, 155 Cal.App.3d at pp. 371-372; *Dalgleish v. Holt*, *supra*, 108 Cal.App.2d at pp. 565-566.) Here, unlike the facts in *Dalgleish* and *Western Airlines*, networking with colleagues was a purpose of Abraham's business trip and was the conduct she was engaged in at the time of her death. Plaintiffs have not shown Abraham had a social relationship with her colleagues such that their night out was personal rather than professional, or that the crash was motivated by conduct completely unrelated to the purpose of the business trip. In the end, Abraham's death arose within the scope of her employment not just because dining was a necessary part of her business trip but because networking and socializing with her colleagues was as well.

Plaintiffs spend much time challenging the trial court's reasoning. We do not address assertions of trial court error in its reasoning and analysis because, on summary judgment review, we review the application of the law to the facts de novo. (*Johnson v. City of Loma Linda*, *supra*, 24 Cal.4th at pp. 65-66.)

We also do not address plaintiffs' assertions that Wells Fargo's reliance on certain cases is misplaced given the procedural posture of those cases. We do not rely on those

9

cases in our analysis and instead rely on the undisputed facts demonstrating Abraham's conduct at the time of her death and the purpose of the business trip, which we conclude were inextricably related. Accordingly, the trial court properly granted Wells Fargo's motion for summary judgment.

## DISPOSITION

The judgment is affirmed. Plaintiffs shall pay costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)-(2).)


/s/
ROBIE, Acting P. J.


We concur:



/s/
KRAUSE, J.



/s/
WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10